# OWENSBORO *v.* OWENSBORO WATERWORKS CO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF KENTUCKY.

No. 58. Argued November 4, 5, 1903.—Decided November 30, 1903.

The power to regulate water rates is a governmental power continuing in its nature which, if it can be bargained away at all, can only be by words of positive grant and if any reasonable doubt exists in regard thereto it must be resolved in favor of the existence of the power.

An ordinance of a city of Kentucky before it became a city of the third class giving a water company a right to make and enforce, as part of the conditions upon which it would supply consumers, all needful rules and regulations not inconsistent with the law must be construed as to the law, as it might be altered, and when the city becomes a city of the third class and thus has power under the general law to provide the city with water by contract or by works of its own and to make regulations for the management thereof and to fix prices to consumers, an ordinance subsequently enacted during the life of the franchise fixing the price of water is not void as against the water company under the impairment of contract clause of the constitution of the United States, and in the absence of other grounds the Circuit Court of the United States has no jurisdiction of a suit in equity to restrain the enforcement of such last enacted ordinance, no question of unreasonableness of the rates being involved.

THIS is a bill in equity to enjoin the city of Owensboro, Kentucky, from regulating the rates of the appellee, the Owensboro Waterworks Company.

Lawson Reno, police judge of the city, was made a party. The Circuit Court granted a temporary injunction. Before final hearing, a motion was made before Circuit Judge Lurton to dissolve the injunction, the motion was denied on the ground of the seriousness of the questions involved, and the propriety of following the previous ruling. On final hearing, the injunction was made perpetual against the city, and the bill dismissed as to Lawson Reno. The city then took an appeal to Circuit Court of Appeals. The appeal was dismissed on the ground that the jurisdiction of the Circuit Court having been invoked

on a constitutional question, the appeal should have been taken directly to this court. 115 Fed. Rep. 318. The city then brought the case here from the Circuit Court.

The city asserts the right to regulate the rates of the appellee under a statute of the State. The construction of the statute is contested by the appellee. The appellee urges, besides, that the statute so interpreted violates its contract with the city, and that the rates as fixed deprive it (the appellee) of its property without due process of law. These contentions make the issues between the parties. The bill is voluminous. The allegations with which we are concerned are the following: The appellant was created a city by the general assembly of Kentucky in 1866. Its charter was amended in 1882, and it continued under this charter until June, 1893, when it was made a city of the third class under the general laws of the State. These laws provided that "the repeal of any law by the provisions of this law (the charter) shall not in anywise be so construed as to affect any right or liability acquired or assumed thereunder by or on the part of the city, or any persons or body corporate. This law shall not in any manner affect any right, lien or liability accrued, established or subsisting under and by virtue of previous charters or amendments thereto, or ordinances passed thereunder. But such rights, lien or liability shall be enforced, and such action or proceeding shall be carried on in all respects as if this law (defendant city's present charter) had not taken effect; nor shall this law be in anywise so construed as to affect the right or liability acquired or assumed under previous charters or amendments thereto, or ordinances passed thereunder on the part of the city or any person or body corporate."

The Owensboro Water Company was incorporated in 1876, and its general business was to construct and operate a waterworks plant for the purpose of supplying the city and its inhabitants with water, and it constructed and operated such works under the privilege and authority of an ordinance of the city, passed September 10, 1878. The ordinance had the usual

provision for the use of the streets, and made the duration of
the grant identical with the duration of the company. It was
provided that the ordinance should be binding upon the city
"as a contract in the event" of its written acceptance within
ten days after its passage, and "be the measure of the rights
and liabilities of the said city and of the water company."

Section 9 of the ordinance was as follows:

"Sec. 9. The said company shall have the power and au-
thority to make and enforce, as part of the condition upon
which it will supply water to its consumers, all needful rules
and regulations, not inconsistent with the law or provisions
of this ordinance."

In June, 1889, the appellee began negotiations with the
Owensboro Water Company for the purchase of its franchise
and plant, and of all of its contracts with the city, but did not
and would not consummate said purchase until the city agreed
to grant it (appellee) a franchise and license to maintain a
system of waterworks in the city for a period of twenty-five
years, and issue and grant to it in its own right all of the rights
and privileges which had theretofore been granted to the water
company by the ordinance and contracts of September 10,
1878. On the 3d of June, 1889, the city passed an ordinance
approving such purchase, and granted a franchise and license
to the appellee to maintain and operate a waterworks plant for
supplying the city and its inhabitants with water, and ac-
cepted the appellee as the successor of the water-company to
the contracts between the latter and the city. The ordi-
nance was expressed to be in consideration "of the purchase,
by the Owensboro Waterworks Company of Owensboro, Ken-
tucky, of the waterworks of the Owensboro Water Company."

On the 10th of June, 1889, relying upon the ordinance of the
3d, the appellee consummated the purchase from the water
company of its works, franchises and contracts, and received
them from that company, and it "has ever since then under
the orders and directions" of the city, maintained and ex-
tended its system, on account of which it has expended large

sums of money, and its plant is now reasonably worth not less than $250,000, and could not be constructed for less than that sum.

On the 19th of March, 1900, the city passed an ordinance providing "that hereafter every person, firm, company and corporation, engaged in the business of furnishing water to consumers thereof in the city of Owensboro, shall furnish the same to consumers thereof for domestic and manufacturing purposes and uses, and for all other purposes and uses, at rates and prices not exceeding the rates and prices herein named and fixed, which rates and prices are deemed reasonable and just; that is to say, water shall be furnished to all mills, laundries, saloons, distilleries, breweries, livery stables, ice factories and manufacturing establishments, hotels, street railway companies and all factories of every kind at the following named rates."

Then followed a statement of the rates fixed, graduated according to the amount of water consumed or kind or purpose of use. And it was provided (sec. 8), "that if any person, firm, company or corporation engaged in the business of furnishing water to consumers thereof in said city of Owensboro shall demand, charge, exact or receive, directly or indirectly, of or from any consumer or consumers of water in said city, as consideration or compensation for water furnished or supplied to such consumer, any money, property or other thing of value over and above or in excess of the rates and prices for water herein named and prescribed, or shall fail or refuse for ten days, without reasonable excuse, to supply water as prescribed and required in and by section seven (7) of this ordinance; or shall fail or refuse to keep the accounts, or the books required to be kept at Owensboro, or make the reports in writing to the common council, as required by section six (6) of this ordinance, such person, firm, company or corporation so offending shall be fined, upon conviction, in a sum not less than ten dollars and not exceeding fifty dollars, for each offense."

The ordinance in full is inserted in the margin.[1]

It is alleged that the enforcement of the ordinance will cause appellee irreparable injury and in what manner that will be

[1] An ordinance to fix and regulate rates, prices and charges for water furnished consumers in the city of Owensboro, and for other purposes.

Be it ordained by the common council of the city of Owensboro:

Sec. 1. That hereafter every person, firm, company and corporation engaged in the business of furnishing water to consumers thereof in the city of Owensboro, shall furnish the same to such consumers thereof for domestic and manufacturing purposes and uses, and for all other purposes and uses, at rates and prices not exceeding the rates and prices herein named and fixed, which rates and prices are deemed reasonable and just; that is to say, water shall be furnished to all mills, laundries, saloons, distilleries, breweries, livery stables, ice factories, hotels, street railway companies, and all factories and manufacturing establishments of every kind, at the following-named rates, subject to the exceptions contained in section two (2) of this ordinance, to wit:

(1) In all cases where the amount of water consumed averages two thousand gallons per day, or less, estimated by the month, ten cents per thousand gallons; (2) where the daily consumption of water averages two thousand gallons, or more, and less than four thousand gallons, estimated by the month, nine cents per thousand gallons; (3) where the daily consumption of water averages four thousand gallons, or more, and less than ten thousand gallons, estimated by the month, eight cents per thousand gallons; (4) where the daily consumption of water averages ten thousand gallons, or more, and less than fifteen thousand gallons, estimated by the month, seven cents per thousand gallons; (5) where the daily consumption of water averages fifteen thousand gallons, or more, and less than twenty-five thousand gallons, estimated by the month, five cents per thousand gallons; (6) where the daily consumption of water averages twenty-five thousand gallons, or more, and less than forty thousand gallons, estimated by the month, four cents per thousand gallons; (7) where the daily consumption of water averages forty thousand gallons, or more, estimated by the month, three and one-half cents per thousand gallons.

That for the purpose of ascertaining and estimating accurately the quantity of water consumed by consumers in the classification of this section and the compensation to be paid therefor, it is hereby made the duty of the persons, firms, companies and corporations, and they shall, on request made in writing, and within thirty days after such request is made, place a water meter, in good condition and repair, in connection with the pipe or main leading into and supplying water to such consumers, and the said meter shall be kept in good repair by the person, firms, company and corporation furnishing or supplying the water to such consumers, and the said meters shall be examined and read monthly, for the purpose of ascertaining its condition and the quantity of water consumed.

done is detailed, and that, appellee " could not under the most prudent management, earn any per cent upon its investment, but would be compelled to operate its plant at an actual loss."

Provided, that the minimum annual rate to be paid by all consumers of water described in the classifications thereof in this section, per annum, shall be twenty-four (24) dollars; and in no case shall the consumer of water who uses or consumes, annually, two hundred and forty thousand gallons of water, or less, be charged or pay more or less than twenty-four (24) dollars per annum.

SEC. 2. That water furnished by said persons, firms, companies and corporations to consumers thereof for domestic purposes and uses where no meter has been put in or attached for ascertaining the quantity of water used, shall be furnished at rates and charges not exceeding or above the following-named rates and charges, per year, to wit:

(1) For each wash stand, wherein warm and cold water, or either, is used, two dollars; (2) for each kitchen sink, wherein warm and cold water, or either, is used, two dollars; (3) for each bath tub, wherein warm and cold water, or either, is used, two dollars; (4) for each water closet and urinal, two dollars; for sprinkling premises, lawn, pavement and street in front of or adjacent to the premises, per annum, two dollars and fifty cents for the first two hundred square yards or less, one cent for each additional square yard; (6) for private dwelling per annum where only one tap or faucet is used, containing four rooms or less, excluding hallways, garrets, bath rooms, water closets, two dollars, and for each additional room fifty cents; (7) for each cow, one dollar, for each horse, one dollar; and for each carriage, buggy and spring wagon, one dollar; (8) for filling cisterns, twenty cents each thousand gallons.

SUB. SEC. 2. And for furnishing water for offices, banks, stores and other places than residences (above specified in this section), the rates and charges therefor shall be at rates not exceeding or above the following rates and charges, per year, to wit:

For each wash stand, wherein warm and cold water, or either, is used, three dollars; (2) for each water closet and urinal, three dollars; (3) for hydrant, three dollars; (4) for barber shops, for first chair, three dollars, for each additional chair, one dollar; (5) for blacksmiths, for first forge, two dollars, and for each additional forge, one dollar; (6) for plasterers, one-fourth of one cent per square yard; (7) for bricklayers, six cents per one thousand brick, sprinkling and laying.

Provided, that any of the consumers embraced in the classification of this section may, in lieu of the above rates, require the person, firm, company or corporation furnishing the water to the consumer, to attach to the pipe leading into the premises of the consumer, a water meter, and it shall be the duty of the person, firm, company or corporation furnishing the water to attach the said meter within thirty days after said request is made therefor in writing, and thereafter the said consumer shall be charged, and shall

For the reasons alleged the ordinance of March 19 violates. the constitution of the State of Kentucky and the Fifth and Fourteenth Amendments of the Constitution of the United

pay for the water furnished at the minimum rate of twelve dollars per annum, and for all water consumed in excess of one hundred and twenty thousand gallons per annum there shall be paid ten cents for each thousand gallons; but such meters shall not be attached except by the written request of the consumer.

And, provided further, that before meters are attached to or connected with the pipes or mains leading into the premises of any consumer described in the classification of this section, by the person, firm, company or corporation supplying the water, consent of such consumer shall be first obtained, and if objection shall be made by the consumer, the mayor of the city, upon complaint by the person, firm, company or corporation furnishing the water, shall summon the consumer to appear before him, and shall hear and determine the matter, and decide whether the meter shall be attached, and his decision shall be final.

If said persons, firms, companies or corporations furnishing water shall attach a meter in any case to the pipe leading into any consumer's premises, without his consent, or against his objection, and the water annually consumed shall not be as much as one hundred and twenty thousand gallons, the consumer shall pay for the water actually consumed at the rate of ten cents per thousand gallons, and no more.

SEC. 3. That water rates may be collected by said persons, firms, companies and corporations from all consumers falling within the provisions of sections one and two of this ordinance who have water meters attached, monthly, quarterly, or semi-annually, at the election of said persons, firms, companies or corporations furnishing the water, but water rates shall not be collected in advance except by voluntary consent of the consumer.

Water may be shut off from any consumer for non-payment of water rates, or other sufficient reason, only after ten days' written notice served upon said consumer or his wife, in his absence from home, or in case of absence from premises of both husband and wife, then the said notice shall be delivered by depositing same in the Owensboro post office addressed to said water consumer.

SEC. 4. That if any person, firm, company or corporation shall be or become a consumer of water, and shall not be included in the classification made and contained in the second section of this ordinance, the quantity of water used or consumed by such consumer shall be ascertained by meter and compensation made therefor at the rates and charges specified in the first section of this ordinance.

SEC. 5. That all persons, firms, companies or corporations furnishing water to consumers in the city of Owensboro, that shall have mains, pipes and conduits in the streets, alleys and public ways of the city, shall hereafter, during the months of April, May, June, July, August, September, October,

States.   It is also alleged, with much amplification, that the passage of the ordinance was "*ex parte* and partisan," without deliberation or investigation or knowledge, and, besides, the

---

November in each year, cause all water mains of said persons, firms, companies and corporations to be washed and cleaned, and for this purpose shall cause all fire hydrants to be open to their full capacity and water discharged from each for at least five minutes once in every two weeks; and during the months of December, January, February and March shall, for said purpose, cause all fire hydrants to be open to their full capacity for at least five minutes once in each and every of said months last mentioned.

SEC. 6. That hereafter all persons, firms, companies and corporations engaged in the business of furnishing water to consumers shall keep an exact, complete and true account of all its incomes, gains and receipts from all and every source whatever, in detail, giving all the items thereof, and date of receipt of the same, and an exact, complete and true account of all expenditures, showing date and amount of each and every item of expense, costs and expenditure and the whole thereof; and the books containing said accounts shall be kept at Owensboro, and shall be open at any time to inspection and examination by the common council or a committee thereof appointed for that purpose, and shall make and return to the common council, at the end of each six months hereafter, on the first day of January and July of each year, a true and complete summary of the same, which shall be verified by the oath of the president, secretary or treasurer of said persons, firms, companies or corporations furnishing water, and the said report shall be spread on the journal and filed and preserved by the city clerk in his office.

SEC. 7. That it shall be the duty of any person, firm, company or corporation engaged in the business of furnishing water to consumers thereof, in the city of Owensboro, through pipes, mains or conduits laid in the streets, alleys and ways of said city, to furnish water to all persons who may make application thereof in writing, and within ten days after the date fixed in such written application, and who desire the same furnished in houses or places situated on any of the streets, alleys or ways or places in the city, wherein any of the said mains, pipes or conduits are located or laid, and the said person, firm, company or corporation shall put down all necessary pipes therefor, at the expense of the person, firm, company or corporation furnishing the water to the boundary line of the lot or premises of the applicant for water or consumer, and the remainder of the pipes, machinery or appliances necessary for conveying the water into the houses or upon the premises shall be borne by the said applicant or consumer of water.

SEC. 8. That if any person, firm, company or corporation engaged in the business of furnishing water to consumers thereof in said city of Owensboro shall demand, charge, exact, or receive, directly or indirectly, of or from any consumer or consumers of water in said city, as consideration or compensation for water furnished or supplied to such consumer, any money, property

city had no power to pass the ordinance, and that the latter violates the contract existing between appellee and the city. It is also alleged that financial injury will result to appellee from the enforcement of the ordinance in regard to meters (sec. 2), and from the prohibition to collect rates in advance, "except by voluntary consent of the consumer." (Sec. 3.) Prosecutions are threatened under the ordinance which will result, it is alleged, in irreparable injury to appellee, and an injunction is hence prayed against the city.

A demurrer to the bill was overruled. An answer was then filed, which denied the allegations of the bill and justified the action of the city.

*Mr. George W. Jolly* for appellant.

*Mr. William T. Ellis* and *Mr. Robert W. Bingham* for appellee. *Mr. W. W. Davis* was on the brief.

MR. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

By the act of the general assembly of Kentucky, approved June 14, 1893, the appellant was made a city of the third class, and was given, as a city of that class, the following powers expressed in section 3290: "The common council of said city shall, within the limitations of the constitution of the State and this act, have power by ordinance; . . . -5th, to pro-

or other thing of value over and above, or in excess of the rates and prices for water herein named and prescribed; or shall fail or refuse for ten days, without reasonable excuse, to supply water as prescribed and required, in and by section seven (7) of this ordinance, or shall fail or refuse to keep the accounts, or the books required to be kept at Owensboro, or make the reports in writing to the common council, as required by section six (6) of this ordinance, such person, firm, company or corporation so offending shall be fined, upon conviction, in a sum not less than ten dollars and not exceeding fifty dollars, for each offense.

SEC. 9. This ordinance shall go into full force and effect on and after the first day of April, in the year of our Lord nineteen hundred.

Approved, March 21st, 1900.

vide the city and the inhabitants thereof with water, light, power, heat and telephone service, by contract, or by works of its own, located either within or beyond the boundaries of the city. To make regulations for the management thereof, and to fix and regulate the prices to consumers and customers."

Under this section the city passed the ordinance which prescribes the rates and regulations complained of. The Circuit Court decided that the city was not given the power to pass the ordinance, and considered it unnecessary to pass on the other issues. The court said:

"If the city of Owensboro had no lawful power or authority to pass the ordinance at all, then the enforcement of it would clearly be a taking from the complainant of its right to certain property. First, without compensation; second, without due process of law; third, without giving to it the equal protection of the law.

"This makes it necessary to inquire whether the city had the statutory power and authority to pass the ordinance complained of. It does not seem to be needful to inquire whether the state constitution gives the general assembly power to delegate authority in the premises to the city. The initial proposition is, has the legislature done so in fact, whether it had the power or not? This must depend upon the proper interpretation and construction of section 3290 of the Kentucky Statutes, . . ."

Interpreting the section the court held that the word "thereof" in the last sentence of the section had for its antecedent the words "works of its own." Substituting these words for the word "thereof," the sentence would read, and the city's power would be, "to make regulations for the management *of its own works,* and to fix and regulate the prices to consumers and customers." But another ambiguity appears, viz., of what is the city to fix and regulate the prices? Certainly of something, and it would seem from the context, the same thing, of which it was to regulate the management. But this leads to an absurdity, and we must find a purpose (antecedent) to which

both powers can refer. The city might, indeed, make regulations for the management of its works, but it could not fix and regulate the price of them to consumers and customers. Besides, we cannot conceive that an explicit grant of power was necessary to enable the city to manage its own works. The power to construct would have implied the power to manage and operate. It must not be overlooked that the section was intended to apply not only to the appellant city but to all cities of the third class, and confer power not only to provide water, but other services, and it might have seemed necessary, or at any rate prudent, to the legislature to reserve to the cities the power over the management of works constructed by private persons, and as prudent to reserve a power to fix and regulate the prices to consumers of the services afforded. It is certainly not difficult to conceive the necessity of the exercise of those powers, and if attempted to be exercised without a reservation, the cities might be met (and there are examples of this) with the contention that the power had been bartered away and was precluded by the obligation of a contract. The construction urged by appellee must, therefore, be rejected. There is a more natural one. The purpose of section 3290 was to provide the inhabitants of cities of the third class with the services mentioned—water, light, power, heat and telephone. They could be provided by the cities directly or they could be provided by private persons; but whatever way provided, the power was given to regulate the management and fix the rates of the services, and this was but the endowment of a common governmental power.

It is, however, contended that the ordinance is in violation of the contracts between the city and appellee, constituted by the resolutions and ordinance of the 3d of June, 1889. The argument is that the city had entered into contracts with the Owensboro Water Company, the predecessor of appellee, to which contracts and their obligations and rights, it is contended, the appellee succeeded by assignment from the water company, with the consent and approval of the city as ex-

pressed in the resolutions and ordinance of June 3, 1889. To determine their legal effect, however, it will be necessary to consider the law which authorized them.

At the time of the passage of the ordinance granting the Owensboro Water Company the right to construct waterworks the city existed and was exercising its powers under the charter of 1878, and the provision in that for supplying water to the inhabitants of the city was as follows: "To make, establish and regulate wells, cisterns, reservoirs and pumps, and to provide for the furnishing of the city and the inhabitants thereof with water and gas."

The same provision was carried into the charter of 1882, and constituted the authority of the city when the ordinance and resolutions of June, 1889, were passed. It is contended that this provision gave the city no power to fix the rates. And counsel say: "In such case and in the absence of an express contract the individual or corporation furnishing water for domestic purposes may charge whatever seems right and reasonable."

But counsel go further. They deny the right of the city to fix rates, and yet assert its power to enter into an irrevocable contract with the water company giving it such power, that is, giving it power to fix rates free from any regulation by the city, not only under any authority the city then possessed, but under any authority the city might be given by the legislature.

In this contention there are several elements, but we pass their consideration, and determine what contracts, if any, the city entered into with the water company. Of course, it is implied in the grant to the company that it might charge some rates to consumers, but the question is, were those rates exempt from regulation by the city under any power it then had or might be given? An affirmative answer is contended for by the appellee under sections 9, 10 and 14 of the granting ordinance. Section 9 is the pivotal section. The others are complementary. By it the company was given "power and authority to make and enforce *as a part of the condition* [italics

VOL. CXCI—24

ours] upon which it will supply water to its consumers, *all needful rules and regulations* [italics ours], not inconsistent with the law or provisions of this ordinance." The section is concerned with the rules between the company and consumers alone. The company may enforce all needful rules and regulations *as part of the condition* upon which it will supply water. What is the other part of the condition? It must be the payment of rates, but to that part of the condition the power to make regulations does not apply. It would ignore the distinctions made by the section and give besides the words "rules and regulations" too large a meaning to make them include the power of fixing rates to consumers. They have adequate and useful signification without that. There were many things in the supply of water to consumers and in the orderly and prudent conduct of the business of the company which might need rules and regulations.

And even so construed, the power conferred is not without limitation. The rules and regulations must not be inconsistent "with the law," and this means not only as the law was when the ordinance was passed, but as the law might become. *Ruggles* v. *Illinois*, 108 U. S. 526; *Railroad Commission Cases*, 116 U. S. 307. In the latter cases a grant of power to the railroad company was "to make and prescribe such by-laws, rules, and regulations as they shall deem needful and proper touching . . . all matters whatsoever which may appertain to the concerns of said company." The company was also given the power "from time to time to fix, regulate, and receive the toll and charges by them to be received for transportation of persons and property on their railroad." From this grant of power it was claimed that the company had "the right of managing its own affairs and regulating its charges for the transportation of persons and property, free of all legislative control." Mr. Chief Justice Waite, speaking for the court, replied: "This power of regulation is a power of government, continuing in its nature, and if it can be bargained away at all it can only be by words of positive grant, or something

which is in law equivalent. If there is reasonable doubt, it must be resolved in favor of the existence of the power."

This doctrine has been affirmed numbers of times since. *Freeport Water Co.* v. *Freeport City,* 180 U. S. 587; *Rogers Park Water Co.* v. *Fergus,* 180 U. S. 624; *City of Joplin* v. *Southwest Missouri Light Co., ante,* p. 150. And the same doctrine prevails in Kentucky. *Winchester &c. Turnpike Road Co.* v. *Croxton,* 98 Kentucky, 739.

From these views it follows that if the city had no power under the charters of 1866 and 1882 to fix rates, and we only assume this, not decide it, such power was conferred by section 3290 of the act of June 14, 1893, and the city is not precluded from the exercise of that power by sections 9, 10 and 14 of the original ordinance granting the Owensboro Water Company the right to construct waterworks, nor by the ordinance of June 3, 1889, approving the transfer of the rights and contracts of that company to the Owensboro Waterworks Company, the appellee herein. Nor is the city, by said ordinance, precluded from regulating the business of the appellee in the manner provided in the ordinance of March 9, 1900, which is the subject of the present controversy. It is true that it is contended that section 3 of the ordinance forbids the appellee from collecting rates in advance from all consumers. But the city does not contend for that construction. It claims only that the provisions in regard to the collection of rates in advance apply only to consumers using meters, and even as to those consumers appellee can make reasonable regulations to secure the payment of rates. The ordinance is not absolutely clear, and we may resolve its ambiguities in accordance with the concession of the city. It may be presumed that there was no intention to enact unreasonable and oppressive regulations.

Two other contentions remain to be considered—one made by appellant, and the other made by the appellee. It is difficult to assign a place or purpose in the discussion of the issues to that made by the appellant. The contention is that the Owensboro Water Company had no power to transfer its prop-

erty and rights and franchises to the appellee. To what consequence is the contention directed? Surely the city wants an object for its regulation. The appellee is in possession of the waterworks, and is supplying the inhabitants of the city with water. It is that service which the city desires to regulate, and it is to "every person, firm, company and corporation" engaged in that service the ordinance of March 21, 1900, is addressed. No other person, firm or corporation than the appellee is so engaged in Owensboro, or has been so engaged for some years. We do not think that the legality of the ordinance can be questioned or measured by either the company or the city by the defects or perfections of the title of the company to its franchises or property. It may be, however, that it is not intended to press the contention so far, but to confine it to the denial of the exemption claimed by appellee as successor of the Owensboro Water Company. But, as we hold that the Owensboro Water Company had no such exemption, the contention becomes unimportant.

The other contention made by appellee is that the rates fixed by the city are unreasonable. Upon this contention we shall not pass. It depends upon many questions of fact and of values to which the Circuit Court gave no attention and on which it expressed no judgment. It is better for a trial court to determine such questions in the first instance. *Chicago, Milwaukee &c. Ry.* v. *Tompkins,* 176 U. S. 167, 179.

*Decree of the Circuit Court is reversed, and the case remanded for further proceedings in accordance with this opinion.*