# DANVILLE WATER COMPANY *v.* DANVILLE CITY.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 373. Submitted November 12, 1900.—Decided March 25, 1901.

The judgment below is affirmed on the authority of *Freeport Water Co.* v. *Freeport City*, *ante*, 587.

THE case is stated in the opinion of the court.

*Mr. Alexander Pope Humphrey* and *Mr. W. W. Davies* for plaintiff in error.

*Mr. John H. Lewman* and *Mr. George F. Rearick* for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

The parties to this action were respectively plaintiff and defendant in the courts of the State, and we will so denominate them. The plaintiff is a private corporation, and the defendant is a municipal corporation organized and existing under the general laws of the State. The action was brought by the plaintiff to recover the sum of $5000 alleged to be due for the rental of certain fire hydrants.

The cause of action relied on is based on an ordinance passed on the 9th of November, 1882, by the defendant, granting the plaintiff the privilege of constructing and maintaining waterworks for supplying the city of Danville, Illinois, with water. The ordinance provided in detail for the character of the works and the supply, the rates to consumers, whether furnished by meter or otherwise, and the purchase by defendant of the works at the expiration of five, ten and twenty years, and at the expiration of thirty years of any renewed term.

Section 8 and section 14 are respectively as follows:

"In consideration of the benefits which will be derived by

the said city and its inhabitants from the construction and operation of the said waterworks, and in further consideration of the water supply hereby secured for public uses, and as the inducement to said water company to accept the provisions of this ordinance and contract, and to enter upon the construction of said waterworks, the rights and privileges hereby granted to and vested in said water company shall remain in force and effect for thirty years from the passage of this ordinance; and for the same consideration and as the same inducement, the city of Danville hereby rents of the Danville Water Company, for the uses hereinafter stated, one hundred fire hydrants of the character hereinafter described, and for and during the term of thirty years from passage of this ordinance, and agrees to locate them promptly along the line of the street mains, on demand of said water company, and on submission by it to said city of a plan of the location of said street mains, and agrees to use the said hydrants carefully and to pay said water company for any injury which may happen to any of them when used by any officer, servant or member of the fire department of said city, and agrees to pay rent for said one hundred hydrants at the rate of seventy-five dollars each per year, and agrees to pay during the unexpired term of said ordinance and privilege, for any additional fire hydrants which city may hereafter locate at the rate of sixty-two and fifty one hundredths dollars each, per year, for the next forty additional hydrants, and for all fire hydrants in excess of one hundred and forty at the rate of fifty dollars each, per year; all of which sum shall be paid by said city to said water company, beginning from the dates when each of such hydrants shall be put into successful operation, in quarter-yearly instalments on the first days of February, May, August and November of each year, and terminating upon the expiration of said term of thirty years, or upon the purchase of said works and their privileges and property by the said city.

" This ordinance shall become binding as a contract on the said city of Danville in the event that the said Danville Water Company shall, within ten days from the passage and publication of this ordinance, file with the city clerk of said city its

written acceptance of the terms, obligations and conditions of this ordinance, and upon such acceptance this ordinance shall constitute the contract, and shall be the measure of the rights and liabilities of the said city and the said water company."

The acceptance was duly filed by plaintiff. On the first of May, 1883, another ordinance was passed amending the first ordinance, for the construction of the works, the streets where the mains should be laid, and the place where the fire hydrants should be put, and how constructed.

Section 2 provided as follows:

"This ordinance shall become binding as a part of the contract existing between the city of Danville and the Danville Water Company in the event that said water company, shall, within ten days from the passage and publication of this ordinance, file with the city clerk of said city its written acceptance of it."

Between the 8th of June, 1893, and the 18th of October, 1894, twelve other ordinances were passed, requiring the extension of the mains of the water system to other streets and the erection of fifty-seven additional fire hydrants; all of the ordinances were declared binding as contracts upon acceptance of the plaintiff, and all were accepted. The rental of the hydrants was fixed, as to some of them, at $62.50 per annum, and others at $50 and $40 per annum. In the ordinance fixing the latter sums it was provided that nothing therein should "operate to affect in any way any of the provisions of the ordinance heretofore passed by said city relative to the Danville Water Company except to the extent of the reduction of the rental of the additional hydrants therein provided and hydrants thereafter to be provided."

There was an allegation that plaintiff did all things required of it in the construction of the system, and put in all mains and hydrants and kept them supplied with water.

The pleas of the defendant admitted that the sum of $1930 was due, but denied liability for anything over that sum, because the rental for the hydrants had been reduced by an ordinance passed by the city January 17, 1895, which was entitled "An ordinance prescribing the maximum rates and charges for

the supply of water furnished by the Danville Water Company of the city of Danville." The ordinance recited that after a careful comparison of water rates and charges in other cities it was found that those of the Danville company were "unjust, excessive and unreasonable." And that whereas under the act of the State approved June 6, 1891, in force July 1, 1891, and under "other fully competent and complete legal authority," the city was empowered to prescribe by ordinance maximum rates for water furnished by the Danville company; and whereas, after full investigation the members of the council believed the rates prescribed were just and reasonable, a schedule or scale of rates was ordained to take effect on the first of May, 1895. The rental of fire hydrants was reduced for the first one hundred and forty to a uniform rate of $50 per annum; for all others then rented and others which should be rented, $40 per annum. For certain uses of water which had been theretofore furnished free by the plaintiff a rate was fixed, to be paid by the city. Provision was made for the appearance by the city attorney if the plaintiff should desire to apply to the circuit court of the county for a review of the rates.

There was an allegation of notice of the passage of the ordinance to the plaintiff, and the prior ordinances under which plaintiff claimed an irrevocable contract were at the time of the passage of said ordinances in excess of a reasonable compensation for the water supplied, and were at the time of suit "unjust, unreasonable and excessive."

The plaintiff demurred to each of the defendant's pleas, and the demurrer was sustained. The defendant asked that the demurrer be carried back to the declaration, and elected to stand by its pleas. Judgment was entered for the plaintiff in the sum of $2701, motion to arrest, which was denied, and the case was then taken to the Supreme Court of the State, by which court the judgment was reversed, and the cause was remanded for further proceedings in accordance with the views expressed in the opinion filed in the cause.

On the return of the case to the circuit court the defendant by leave of the court filed additional pleas, to which a demurrer was sustained. With this action of the court we have no concern.

In accordance with the opinion of the Supreme Court of the State the demurrer of the plaintiff was overruled as to the first and second pleas of the defendant, and sustained as to the third. The plaintiff elected to stand by its demurrer, and judgment was entered for the sum of $1930 and all costs of suit. On appeal to the Supreme Court it was sustained, the court expressing the following opinion, (186 Illinois, 326):

"This case has practically been before us on two former occasions, the parties then being reversed.

"Counsel for appellant concede the judgment from which this appeal is taken is in exact conformity with the judgments and opinions in the former cases, and that no new question or matter has intervened since the former hearings here. Manifestly the only purpose of this appeal is to obtain a final judgment in this court to enable appellant to take a further appeal, if it should desire to do so.

"Adhering as we do to the reasoning and conclusions announced in *Danville Water Co.* v. *Danville City*, 78 Illinois, 229, and *Same* v. *Same*, 180 Illinois, 235, on the authority of these cases this judgment will be affirmed."

The chief justice of the State allowed this writ of error.

The questions presented by this record are the same passed on in *Freeport Water Co.* v. *Freeport City*, *ante*, 587, and depends upon the same statutes. Upon the authority of that case the judgment of the Supreme Court of Illinois is

*Affirmed.*

Mr. Justice White, with whom concurred Mr. Justice Brewer, Mr. Justice Brown and Mr. Justice Peckham, dissenting.

It will be seen from the opinion of the court that this case differs in no material particular from that of the *Freeport Water Co.* v. *Freeport City*, just decided. Under the sanction of the same statutes considered in the *Freeport* case, the defendant in error, the city of Danville, contracted with the plaintiff in error, the water company, for the period authorized by the statute, and stipulated as to the rates to be paid for a public

water supply. These rates were adhered to until, under the authority of the statute of the State of Illinois passed in 1891, referred to in the opinion in the *Freeport* case, the defendant in error reduced the rates below the contract price. It now asserts in this record that it possessed the power to do so.

For the reasons stated by me for dissenting from the opinion and decree in the *Freeport* case, I dissent from the opinion and decree in the present case.