# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

OMAHA WATER CO. v. CITY OF OMAHA et al.

(Circuit Court of Appeals, Eighth Circuit. June 15, 1906.)

No. 2,361.

1. CONSTITUTIONAL LAW—MUNICIPAL CONTRACTS—IMPAIRMENT OF OBLIGATION.

The Legislature empowered the city of Omaha to contract with individuals or corporations for the construction and maintenance of waterworks "on such terms and under such regulations as may be agreed on." The city by ordinance offered the contract for the construction of the works and their operation for 25 years to the lowest bidder on condition that he would first accept the terms of the ordinance, which provided that the contractor should furnish water to private consumers during the term at such prices as the contractor and the consumers should agree upon, not exceeding certain specified rates. The contractor accepted the ordinance and his assigns constructed the waterworks and operated them for 20 years. The water board of the city ordered the rates reduced below those specified in the ordinance. *Held*, the accepted ordinance was a contract, the order of the water board impaired its obligation, and the water company was entitled to an injunction to restrain its execution.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 385.]

2. MUNICIPAL CORPORATIONS—POWERS, GOVERNMENTAL AND BUSINESS.

Municipal corporations have two classes of powers, the one governmental, in the exercise of which their officers may not bind the municipalities beyond their terms of office, the other business or proprietary, in the exercise of which they are governed by the same rules as individuals or private corporations.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 665-667.]

3. SAME—PROCURING WATERWORKS—EXERCISE OF BUSINESS POWER.

A city exercises its business or proprietary power in purchasing waterworks or contracting for their construction or operation.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 665-667.]

147 F.—1

4. SAME—RATES TO PRIVATE CONSUMERS—POWER OF CITY TO REGULATE BOTH GOVERNMENTAL AND BUSINESS.

The power of a city to regulate or fix the rates which a water, gas, or railway company may collect of private consumers partakes of the nature of a governmental power and also of the nature of a business power.

5. SAME—RATES TO PRIVATE CONSUMERS—POWER TO REGULATE MAY BE SUSPENDED BY CONTRACT.

The Legislature of a state unless prohibited by its Constitution may empower a city to suspend by contract, and a city may suspend in that way for a reasonable term of years, its power to fix or regulate the rates which a third party may collect of private consumers.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1315.]

6. CONSTITUTIONAL LAW—INHIBITION OF GRANT OF SPECIAL PRIVILEGES AND IMMUNITIES—MUNICIPAL CONTRACTS.

Neither the power of a municipality to contract with a third party for the construction and operation of waterworks, street railways, or other public utilities, nor the right of such a third party under such a contract, constitutes a special privilege or immunity within the meaning of those terms in section 16, article 1 of the Constitution of Nebraska, which prohibits the Legislature from "making any irrevocable grant of special privileges or immunities."

7. SAME—RESERVATION OF POWER TO AMEND OR REPEAL CORPORATION LAWS—IMPAIRMENT OF CONTRACT OF THIRD PARTIES.

The power to alter or repeal general laws under which corporations have been organized reserved by section 1, art. 11b [13] of the Constitution of Nebraska 1875, is limited by section 16, art. 1 of the same Constitution which forbids the passage of any law impairing the obligation of contracts, and it does not reserve to the Legislature the power to destroy or impair the contracts of third parties with such corporations.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 368.]

8. SAME—WATER RATES—POWER TO REGULATE—SUSPENSION FOR 25 YEARS NOT UNREASONABLE.

The making of a municipal contract to suspend for 25 years the power of the city to regulate the rates which a water company shall collect from private consumers in consideration of the construction and operation of waterworks, is not an unreasonable exercise of the power to contract therefor.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 757.]

9. SAME—CONTRACTS FOR SUSPENSION OF POWER ENFORCED IF CLEAR—CONSTRUED FAVORABLY TO PUBLIC IF AMBIGUOUS.

Agreements and grants regarding the suspension of the power to regulate rates and regarding other public franchises will not be raised by mere implication, will be construed favorably to public rights if ambiguous and will be protected and enforced if clear.

10. SAME—POWER TO AGREE UPON TERMS AND REGULATIONS IS AUTHORITY TO AGREE UPON RATES TO PRIVATE CONSUMERS.

Power granted to a city to contract for the construction and operation of waterworks "on such terms and under such regulations as may be agreed on" constitutes authority to the municipality to agree with the contractor upon the rates which he may collect of private consumers during a reasonable term of years.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 757.]

**11.** CONSTITUTIONAL LAW—CONTRACT FOR WATER RATES—IMPAIRMENT BY A REDUCTION BELOW THE SPECIFIED RATES.

An accepted ordinance which provides for such rate "as may be agreed upon between the consumer and water company not exceeding" specified rates constitutes a contract by the city that it will not reduce the rates below those specified during the term of the contract, and any such attempted reduction thereof by the city or its water board, under a law of the state, impairs the obligation of this contract.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 385.]

**12.** CORPORATIONS—WATER COMPANIES—MORTGAGE AND FORECLOSURE PASSES CONTRACT TO PURCHASER.

A mortgage of the property and rights of a water company and the foreclosure thereof passes to the purchaser thereunder its contract right to collect rates specified in a contract between it and a city.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 1871.]

**(Syllabus by the Court.)**

Appeal from the Circuit Court of the United States for the District of Nebraska.

The Omaha Water Company, a corporation of the state of Maine, exhibited its bill against the city of Omaha, the water board of that city, and the individual members of that board, all citizens of the state of Nebraska, to restrain them from enforcing an order of the water board made on May 1, 1905, which reduced some of the meter rates fixed by an ordinance of the city passed on July 11, 1880, under which the complainant was furnishing water under a contract with the city, upon the grounds that the order of the water board impaired the obligation of the complainant's contract and established unreasonable rates. This is an appeal from a decree which dismissed this bill on the ground that it failed to state facts sufficient to entitle the complainant to any relief in equity. These facts were disclosed by the bill: The Legislature of Nebraska, by an act approved March 28, 1873, empowered the city of Omaha "to erect, construct and maintain waterworks, either within or without the corporate limits of the city, and to make all needful rules and regulations concerning the use of water supplied by such waterworks, and to all acts necessary for the construction, completion, management and control of the same." Gen. St. Neb. 1873, c. 8, § 15, subd. 27. By an act approved February 27, 1879, the Legislature added to the foregoing subdivision this provision: "And the mayor and council of each city created and governed by said act (the act of March 28, 1873) shall have power to contract with, and procure individuals or incorporations to construct and maintain waterworks on such terms and under such regulations as may be agreed on." Laws Neb. 1879, p. 99, § 15, subd. 27.

The city of Omaha, by an ordinance and an amendment thereto, in the year 1880, provided that any person or corporation who should construct and maintain waterworks of the character described therein for the purpose of supplying the city and its inhabitants with water should have the right of way along the streets and public places of the city for the purpose of placing and maintaining mains, pipes, and hydrants upon the terms and conditions in said ordinance specified. Some of the terms and conditions thus specified were that any person or corporation who should construct such waterworks should furnish water to citizens residing along the line of its mains at all times when any such waterworks should be maintained at rates which should not exceed a certain tariff of water rates set forth in the ordinance which specified the rate for dwelling houses not exceeding five rooms as $6 per annum, and various other specific services at specific prices which are termed "flat rates", that "rents for all pur-

poses not herein named will be fixed by meter measurement as may be agreed upon between the consumer and water company not exceeding meter rates" which were specified to be used as follows:

| Gals. per day. | Rate per 1,000 gals. |
| --- | --- |
| 100 to 500 | 35c. |
| 500 to 1,000 | 30c. |
| 1,000 to 2,000 | 25c. |
| 2,000 to 4,000 | 20c. |
| Over 4,000 | 15c. |

that advertisements for furnishing the city with water for fire protection and public use for the term of 25 years from the completion of such works should be published, that the bids should be accompanied with bonds in the sum of $25,000 conditioned "for the faithful performance of the terms and conditions of this ordinance;" that "said bids shall also be accompanied by a conditional acceptance of this ordinance in the event the contract for the public supply and fire protection shall be awarded;" and that the city of Omaha should have the right at any time after the expiration of 20 years to purchase the waterworks at an appraised valuation.

Sidney E. Locke accepted the terms of this ordinance, bid for the construction of the waterworks thereunder, his bid was accepted and the city made a contract with him for the construction of the waterworks and the rental of 250 hydrants for the term of 25 years. Locke assigned his contract and his rights and franchises thereunder, with the consent of the city, to the City Waterworks Company, a corporation of Nebraska, which constructed the waterworks, and they were accepted by the city on September 4, 1883. By subsequent conveyances the property, rights, and franchises of this corporation vested in the complainant. In March, 1903, the city elected to purchase the waterworks pursuant to the provision of the ordinance of 1880, appraisers were selected, an examination of the waterworks has been made and the matter has been submitted to the appraisers for the completion of their report.

By an act approved March 9, 1905, the Legislature of Nebraska authorized the election of a water board for the city and provided that "if such city or any portion thereof shall be supplied with water for domestic, mechanical, public, or fire purposes by any individual, copartnership or corporation, then and in such case, said board shall have the sole power and authority to regulate and fix the water rates and fire hydrants' rentals." On May 1, 1905, the water board of the city of Omaha passed an order to the effect that the maxima meter rates fixed by the ordinance of 1880 should be materially reduced so that the cost of furnishing water to consumers governed by these reduced rates will not be covered by the complainant's receipts for the water thus furnished and so that the enforcement of this order would reduce the revenues of the complainant below a fair and reasonable return upon the cost of the waterworks and would reduce the complainant's net income below an amount sufficient to provide for maintenance and depreciation, to pay the interest on its mortgage bonds and a dividend of 5 per cent. on its stock.

Howard Mansfield and R. S. Hall (J. M. Woolworth, on the brief), for appellant.

C. C. Wright and John L. Webster (John P. Breen, on the brief), for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court. The water company seeks an injunction against the reduction of the maxima rates fixed by the ordinance of 1880, because the proposed reduction impairs the obligation of its con-

tract with the city in violation of section 16, art. 1, of the Constitution, and because the reduced rates are unreasonable and hence violative of the fifth and fourteenth articles of amendment to the Constitution. The Legislature of Nebraska empowered the city of Omaha to make a contract with individuals or corporations "to construct and maintain waterworks on such terms and under such regulations as may be agreed on." The city prescribed the terms and regulations upon which it offered to make such a contract with the lowest bidder for the construction of waterworks and for their operation for 25 years, and one of these terms was that the bidder should furnish water to private consumers at such rates, not exceeding the rates specified in the ordinance, as the bidder and the consumers should agree upon. Locke accepted the city's offer, made the lowest bid and secured the contract. His assigns built the waterworks, agreed with consumers upon their meter rates as prescribed in the ordinance and operated the works thereunder without objection for more than 20 years. The city has claimed and exercised the option to purchase the works secured to it by the ordinance. Why do not these facts establish an irrevocable agreement between the city and the contractor and his assigns, that, during the term of the contract they shall be free to agree with their consumers upon, and to collect from them any rates which do not exceed those which were specified by the city in its ordinance and offer? Counsel for the city present many plausible answers to this question with an ability and ingenuity that excite admiration. Before entering upon their discussion let us bring clearly to mind some of the established principles by which these answers must be tested.

A city has two classes of powers, the one legislative or governmental, by virtue of which it controls its people as their sovereign, the other proprietary or business, by means of which it acts and contracts for the private advantage of the inhabitants of the city and of the city itself. In the exercise of powers which are strictly governmental or legislative the officers of a city are trustees for the public and they may make no grant or contract which will bind the municipality beyond the terms of their offices because they may not lawfully circumscribe the legislative powers of their successors. But in the exercise of the business powers of a city, the municipality and its officers are controlled by no such rule and they may lawfully exercise these powers in the same way and in their exercise the city will be governed by the same rules which control a private individual or a business corporation under like circumstances. In contracting for the construction or purchase of waterworks to supply itself and its inhabitants with water a city is not exercising its governmental or legislative, but is using its business or proprietary, powers. The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city and for its denizens. Illinois Trust & Sav. Bank v. Arkansas City, 22 C. C. A. 171, 182, and cases there cited, 76 Fed. 271, 292, 34 L. R. A. 518.

The power to fix and to regulate the rates which the inhabitants of a city shall pay to business corporations for water, gas, transportation, and other public utilities partakes of the nature of a govern-

mental power and also of that of a business power. Are the inhabitants of a city paying rates not fixed by contract to quasi public corporations for public utilities? The power to so regulate these rates that they shall not be unreasonable is a legislative, a governmental power which the state or city may exercise, but may not renounce. Is a city without waterworks and hence without rates at which anyone will furnish water therefrom to the municipality or its inahbitants? The making of a contract for the construction and operation of waterworks wherein the parties agree what rates may be collected by the owner of the works from private consumers during a reasonable term of years is the exercise of one of the business powers of the corporation. The purpose of such a contract is not to regulate rates, for there are no rates to regulate. It is to procure water and to get rates for the city and for its inhabitants. Hence it is that the Legislature of a state, unless prohibited by its Constitution, may empower a city to suspend by contract, and a city may suspend in that way during a reasonable term of years, its power to change or regulate the rates which an individual or corporation may collect of private consumers. Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 382, 388, 389, 22 Sup. Ct. 410, 46 L. Ed. 592; Freeport Water Co. v. Freeport City, 180 U. S. 587, 593, 21 Sup. Ct. 493, 45 L. Ed. 679; Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 9, 19 Sup. Ct. 77, 43 L. Ed. 341; Cleveland v. Cleveland City Ry. Co., 194 U. S. 517, 536, 24 Sup. Ct. 756, 48 L. Ed. 1102; Cleveland v. Cleveland Electric R. Co., 26 Sup. Ct. 513, 516, 517, 50 L. Ed. 854.

Let us consider in the light of these rules of law the reasons why the city insists that it is under no obligation to refrain from reducing the rates specified in the ordinance of 1880. The counsel for the municipality argue that the city was without power to make any irrevocable and unalterable contract regarding rates because section 16 of article 1 of the Constitution of Nebraska prohibited it from passing any "law impairing the obligation of contracts or making any irrevocable grant of special privileges or immunities," because section 1 of article 11b [13] of that Constitution provides that "no corporation shall be created by special law, nor its charter extended, changed, or amended. * * * All general laws passed pursuant to this section may be altered from time to time or repealed," and because it was an unreasonable exercise by the city of the power to contract for it to fix definite rates for the supply of water for all time. They cite in support of their argument here Shields v. Ohio, 95 U. S. 319, 24 L. Ed. 357; Tomlinson v. Jessup, 15 Wall. 454, 459, 21 L. Ed. 204; Spring Valley Water Works v. Schottler, 110 U. S. 347, 4 Sup. Ct. 48, 28 L. Ed. 173; Sioux City St. Ry. Co. v. Sioux City, 138 U. S. 98, 107, 11 Sup. Ct. 226, 34 L. Ed. 898; Keokuk, etc., R. Co. v. Missouri, 152 U. S. 301, 14 Sup. Ct. 592, 38 L. Ed. 450; Owensboro v. Owensboro Waterworks Co., 191 U. S. 358, 24 Sup. Ct. 82, 48 L. Ed. 217; County of Stanislaus v. San Joaquin C. & I. Co., 192 U. S. 201, 24 Sup. Ct. 241, 48 L. Ed. 406; and People's Gas Light & Coke Co. v. Chicago, 194 U. S. 1, 13, 17, 24 Sup. Ct. 520, 48 L. Ed. 851.

But a contract made by a municipal corporation with a third person

for the construction of a public building, a street railway, waterworks, or gas works, or for the supply of transportation, water, or any other public utility to the city and its inhabitants creates no special privilege or immunity within the meaning of the first provision of the Constitution cited and neither the contract nor the power to make it is inhibited thereby. Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 14, 17, 19 Sup. Ct. 77, 43 L. Ed. 341; Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 382, 388, 389, 22 Sup. Ct. 410, 46 L. Ed. 592. One who makes such a contract to grade a street, to construct a building or to supply gas or water to a municipality may be said to acquire a monopoly of that work and a special privilege to perform it. But this special privilege or immunity is not granted to him by any law of the state. It is secured to him by his own agreement to render the public service. The law which empowered the city of Omaha to make the contract under consideration was a general law of the state which granted the same authority to all cities of its class. It gave no special privilege or immunity to this municipality, nor did the city offer or grant to Locke or to his assigns any special privilege or immunity to construct or to operate the waterworks. It offered the contract which he secured to the lowest bidder in all the world and gave it to Locke because he agreed to render the service required for the lowest price. Such a general grant of power to contract and such an agreement constitute no special privilege or immunity within the meaning of those terms in the Constitution of Nebraska and the Legislature of the state had ample power to authorize the city to make the agreement under consideration. Nor does the section of the Constitution which provides that general laws affecting the charters of corporations may be altered or repealed condition the validity or the effect of this contract. That section is in pari materia with section 16, article 1, of the same Constitution, which prohibits the Legislature from passing any law impairing the obligation of contracts, and upon familiar principles the two provisions must be read and construed together. So read they provide that the Legislature may make an alteration or repeal of any general law involving the charters of corporations which does not impair the obligation of any contract and that it may make no repeal or alteration of those laws which has that effect. Vicksburg v. Vicksburg Waterworks Co. (May 21, 1906) 26 Sup. Ct. 660, 50 L. Ed. 1102. There was therefore no provision of the Constitution of Nebraska which inhibited or limited the authority of the Legislature to empower the city to make the contract in question.

Whether or not it would be an unreasonable exercise of this power of the city to contract for waterworks for it to agree upon water rates for all time is an academic question which it is unnecessary to consider. It does not arise in this case. The city has exercised its option to purchase these works under the ordinance of 1880, at the end of 20 years from their completion. It has thereby limited the term of the ordinance contract to the time preceding the completion of this purchase, which will undoubtedly make its term less than 25 years. The city has attempted to reduce the rates fixed by the ordinance before the expiration of this limited term. The question is whether or not 25

years is 'an unreasonable term for a city to grant the use of its streets for water mains, to pay hydrant rentals and to agree upon water rates for its inhabitants in consideration of the construction of waterworks and the supply of water to itself and its inhabitants during that term. That question has already been answered by the decisions of the Supreme Court and of this court. It is not an unreasonable exercise of its power. Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 14, 17, 19 Sup. Ct. 77, 43 L. Ed. 341; Illinois Trust & Sav. Bank v. Arkansas City, 22 C. C. A. 171, 183, 76 Fed. 271, 283, 34 L. Ed. 518, and cases there cited; Atlantic City Waterworks v. Atlantic City, 48 N. J. Law, 378, 6 Atl. 24.

The cases cited for the city here are not in conflict with these conclusions and they fail to rule the case in hand. They treat of charters granted by states by general or special laws to corporations as in Shields v. Ohio, 95 U. S. 319, 24 L. Ed. 357, where the statute from which all the powers of a consolidated corporation were derived was enacted under a Constitution which provided that such statutes were subject to be "altered, revoked, or repealed by the General Assembly" and the court held that a subsequent law which prescribed the rates of transportation did not impair the contract between the state and the corporation which was evidenced by the latter's grant of its franchise, because the stipulation of the reservation of the right to modify the grant was a part of that contract, or they construe the effect of specific limitations of the extent and effect of particular contracts, as in Owensboro v. Owensboro Waterworks Co., 191 U. S. 358, 24 Sup. Ct. 82, 48 L. Ed. 217, where the city made an ordinance contract with the water company to the effect that the latter might prescribe water rates "not inconsistent with the law." During the term of the contract the municipality passed from a city of the second class to a city of the first class and thereby became vested by the law with the power to fix prices of water to consumers, and the courts held that a subsequent act of the city prescribing reduced rates was not violative of the contract, because by its terms the water company was limited to prescribing rates "not inconsistent with the law" and the law authorized the city to fix the reduced rate.

In the case at bar the power of the Legislature to authorize the city to agree upon the water rates and upon the other terms of its contract was unlimited, and authority was granted to the city without restriction. The city exercised it, received the benefit of its exercise, and the contract and the constitutional rights of the water company vested thereunder. None of the authorities cited holds that in such a case the contract of the city to maintain the agreed rates is not irrevocable and unalterable.

Another contention in behalf of the city is that the Legislature did not in fact authorize the city to agree upon unalterable water rates to consumers and that the city made no such agreement. In the consideration of these two questions the following authorities have been cited and examined: Bienville Water Supply Co. v. Mobile, 175 U. S. 109, 20 Sup. Ct. 40, 44 L. Ed. 92; Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 14, 17, 19 Sup. Ct. 77, 43 L. Ed. 341; Freeport

Water Co. v. Freeport City, 180 U. S. 587, 592, 599, 21 Sup. Ct. 493, 45 L. Ed. 679; Danville Water Co. v. Danville City, 180 U. S. 619, 21 Sup. Ct. 505, 45 L. Ed. 696; Rogers Park Water Co. v. Fergus, 180 U. S. 624, 21 Sup. Ct. 490, 45 L. Ed. 702; Knoxville Water Co. v. Knoxville, 189 U. S. 434, 436, 23 Sup. Ct. 531, 47 L. Ed. 887; Owensboro v. Owensboro Waterworks Co., 191 U. S. 383, 24 Sup. Ct. 82, 48 L. Ed. 217; People's Gas Light & Coke Co. v. Chicago, 194 U. S. 1, 13, 17, 24 Sup. Ct. 520, 48 L. Ed. 851; Stanislaus County v. San Joaquin C. & I. Co., 192 U. S. 201, 207-8, 24 Sup. Ct. 241, 48 L. Ed. 406; Helena Water Works Co. v. Helena, 195 U. S. 383, 25 Sup. Ct. 40, 49 L. Ed. 245; Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224; Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; Cleveland v. Cleveland City Ry. Co., 194 U. S. 517, 535, 536, 24 Sup. Ct. 756, 48 L. Ed. 1102; Cleveland v. Cleveland Electric R. Co., 26 Sup. Ct. 513, 517, 50 L. Ed. 854; Vicksburg v. Vicksburg Waterworks Co. (May 21, 1906) 26 Sup. Ct. 660, 50 L. Ed. 1102.

In Knoxville Water Co. v. Knoxville, 189 U. S. 434, 436, 23 Sup. Ct. 531, 47 L. Ed. 887, which is perhaps the strongest case in support of the contentions of the city, a water company was incorporated with power to contract with the city and its inhabitants to supply water and to "charge such prices for the same as may be agreed upon between said company and said parties." The incorporation was under a general act which provided that "this act is in no way to interfere with or impair the police or general powers of the corporate authorities of such city, town or village, and such corporate authorities shall have power by ordinance to regulate the price of water supplied by such company." The water company made a contract with the city which consisted of three distinct parts, first, the promises of the water company, second, those of the city, and third, their mutual undertakings. In the first part the company undertook to "supply private consumers with water at a rate not to exceed 5 cents for 100 gallons." The court held that these were in form the words of the water company, that they were subject to the express reservation by its act of incorporation of the power of the city to regulate the price of water furnished by the company and that they did not constitute an agreement with the city that it would not reduce the rate below that specified in the contract. The court added:

"We do not mean that under other circumstances words which on their face only express a limit might not embody a contract more extensive than their literal meaning. Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592. But in that case the rate was fixed by an ordinance which was the language of the city, the ordinance was under a statute which declared that the rates should be established by agreement between the city and the railway company and neither statute nor ordinance reserved a power to the city to alter rates."

Why does not this description of the Detroit case portray the case in hand?

In Freeport Water Co. v. Freeport City, 180 U. S. 587, 589, 599, 600, 21 Sup. Ct. 493, 45 L. Ed. 679, the Supreme Court followed a deci-

sion of the Illinois court to the effect that a power granted to a city to establish such rates "as may be fixed by ordinance" was a continuing power to fix the rates from time to time and not once for all, and that under this authority the city was empowered to reduce the rate fixed by an accepted ordinance which constituted the contract under which the water company had constructed the waterworks.

In Stanislaus County v. San Joaquin C. & I. Co., 192 U. S 201, 207-8, 24 Sup. Ct. 241, 48 L. Ed. 406, the Legislature granted to counties the power to regulate water rates subject to a limitation in a general law under which a canal and irrigation company was incorporated that these counties might not reduce the rates below such prices as would produce 1½ per cent. per month on the capital actually invested. Under this state of the law the canal company was incorporated and constructed irrigation works. Thereafter the Legislature granted to the counties more power, the power to reduce the rates below the limit previously specified and the courts held that the limited grant of power to the counties constituted no agreement with the canal company that the state would not give to the counties more power and that the latter might lawfully reduce the rates under the later power granted.

In Tampa Waterworks Co. v. Tampa, 26 Sup. Ct. 23, 50 L. Ed. 170, the waterworks company procured a contract from the city which, by its terms, gave to the company the right to charge certain rates for water for 30 years. At the time this contract was made the Constitution of the state vested in the Legislature full power to pass laws to prevent excessive charges by persons and corporations engaged as common carriers in transporting persons and property or performing other services of a public nature. The Legislature subsequently passed an act whereby it empowered the cities of the state to prescribe by ordinance reasonable and just maxima charges for water and the city of Tampa prescribed reasonable but reduced rates. The Supreme Court held that, as there was no claim that the rates thus established were unreasonable, the decision of the Supreme Court of Florida that the law and ordinance did not impair the obligation of any contract was not so clearly erroneous as to require its reversal.

In Bienville Water Supply Co. v. Mobile, 175 U. S. 109, 113, 114, 20 Sup. Ct. 40, 44 L. Ed. 92, the Legislature empowered the water company to construct waterworks and to supply the city of Mobile and its inhabitants with water. The company did so and thereafter made a contract with the city of Mobile that it would furnish to that city the use of 260 hydrants for the term of six years, and that it would not charge the citizens higher rates than those specified in the contract. But it did not undertake by the agreement to supply the inhabitants and the city with water. The city strictly complied with the terms of the agreement but proceeded to construct waterworks of its own. The court held that it had the power to build waterworks and that its action in no way impaired the obligation of its contract with the water company. On the other hand, in Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341, a contract by the city to pay hydrant rentals for a term of 25 years and to refrain during that time from constructing or becoming interested in any other

waterworks was sustained by the Supreme Court and the city was enjoined from carrying into execution an ordinance for the construction of new works because that ordinance impaired the obligation of its contract with the water company.

In Vicksburg v. Vicksburg Waterworks Co. (May 21, 1906) 26 Sup. Ct. 660, 50 L. Ed. 1102, the city of Vicksburg made an ordinance contract to give to the waterworks company the exclusive right to construct and maintain waterworks in that city for the term of 30 years, and it was enjoined from proceeding to issue bonds for the purpose of constructing or purchasing other works upon the ground that a subsequent law of the state which empowered it to do so impaired the obligation of its contract with the company. The rule that nothing may be taken by implication against the city and that a contract regarding a public franchise should be construed most favorably to the municipality was earnestly invoked, the decision in the case of Lehigh Water Company's Appeal, 102 Pa. 515, wherein the word "exclusive" was held to except the city was cited and urged upon the attention of the court and it was argued that the contract to give an exclusive right meant exclusive of other corporations and not of the city. But the argument did not prevail. The Supreme Court held that the exclusive right which the city agreed to give was a sole and undivided privilege, and that its contract as effectually estopped it from exercising or sharing this privilege as from granting it to another.

In Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 374, 22 Sup. Ct. 410, 46 L. Ed. 592, the Legislature of the state of Michigan empowered the city of Detroit to contract for the construction and operation of a street railway and provided that the rates of toll or fare should be established by agreement between the railway company and the city. The municipality passed ordinances which were accepted by the railway company whereby it granted the right to use the streets for street railways for 30 years and provided that the rate of fare should not exceed 5 cents for each passenger. The Constitution of Michigan contained a provision that all laws under which municipal corporations were formed might be amended, altered or repealed. The charter of the city gave it general power to control and regulate the use of its streets. The ordinance contract itself reserved to the city the right to make such further rules or regulations as should from time to time be deemed necessary to protect the interest, safety, welfare, or accommodation of the public in relation to the railways. After the railways were constructed the city passed ordinances which by their terms reduced the fares below 5 cents for each passenger. The Supreme Court held (1) that the Legislature gave to the city the power to agree upon unalterable rates of fare for 30 years (page 385 of 184 U. S., page 417 of 22 Sup. Ct. [46 L. Ed. 592]); (2) that the city had so agreed; (3) that this agreement could not be lawfully renounced or modified by the city without the consent of the railway company either under the constitutional provision for the alteration or repeal of municipal charters or under the power to regulate the operation of the railways reserved in the ordinance (page 389 of 184 U. S., page 418 of 22 Sup. Ct. [46 L. Ed. 592]); and (4) that the stipulation

in an ordinance contract that the rate of fare for one passenger shall not to be more than 5 cents is an agreement by the city that it will not reduce the rate below 5 cents for each passenger during the term of the contract, and the court enjoined the city from enforcing the ordinances reducing the fare on the ground that they impaired the obligation of the contract.

In Cleveland v. Cleveland City Ry. Co., 194 U. S. 517, 535, 536, 24 Sup. Ct. 756, 48 L. Ed. 1102, the Legislature authorized the city to fix the terms and conditions upon which street "railways may be constructed, operated, extended, and consolidated." Under this power the city of Cleveland made an ordinance contract whereby it authorized a consolidation and provided that "for a single fare * * * no greater charge than 5 cents shall be collected" during the term of the contract. The Supreme Court held that this was an unalterable agreement that the city would not reduce the rate of fare during the term below that specified therein, that this contract was authorized by the delegation to the city of the power to fix the terms and conditions of the consolidation and that a reduction of the rate was an impairment of the obligation of the agreement. In Cleveland v. Cleveland Electric R. Co., 26 Sup. Ct. 513, 516, 517, 50 L. Ed. 854, this decision was reviewed and affirmed.

Many decisions of the state courts have been examined and considered, but it would be a futile task to review or comment upon them here because in the determination of the question whether a law of the state impairs the obligation of a contract the federal courts must determine for themselves and by the exercise of their independent judgment the existence and the extent of the contract and the effect of the challenged law. Douglas v. Kentucky, 168 U. S. 488, 501, 502, 18 Sup. Ct. 199, 42 L. Ed. 553.

From the decisions of the Supreme Court to which we have adverted these rules are deducible: The power to regulate rates of water, gas, transportation, and other public utilities partakes of the nature of a governmental and of a proprietary power whose exercise may be suspended for a reasonable time by express grant or by contract. An agreement for such a suspension will not be raised by mere implication. Where the meaning of a grant or contract regarding such a suspension or regarding any public franchise or privilege is ambiguous or doubtful, it will be construed favorably to the rights of the public. Where the grant or the contract is clear and plain it will be protected and enforced.

Did the Legislature of Nebraska empower the city of Omaha to agree upon unalterable water rates during the term of the contract in hand? Did the city agree that it would not reduce these rates below those specified in the ordinance? We turn back to the act of 1879 and to the ordinance contract of 1880 in the light of the rules and decisions to which we have adverted for the answers to these questions. Authority had already been granted to the city to build its waterworks and to regulate the use of water derived therefrom when the act of 1879 was passed, but no waterworks had been constructed. The state then granted to the city the additional power to contract with third par-

ties for their construction and operation "on such terms and under such regulations as may be agreed on." Are the rates under which water is to be furnished to private consumers "terms and regulations" upon which parties may agree that waterworks may be constructed and operated? The Supreme Court was of the opinion that they were, for it held in the Cleveland case that a city was empowered to agree with a railway company upon rates of fare for passengers under legislative authority to fix the "terms and conditions" for the consolidation of corporations. The city of Omaha evidently thought so, for by the ordinance of 1880 it made specified water rates one of the terms and regulations of the contract which it offered to the lowest bidder and which it required him to accept. The main purpose of city waterworks is the revenue derived from private consumers of water. The rates which they pay absolutely determine the financial success or failure of a city water company's enterprise. The term or regulation in a contract for the construction and operation of waterworks which more than any other conditions the nature and the prospect of the undertaking is that which fixes the rates which the owner may collect of private consumers. These are matters of common knowledge. The members of the Legislature could not have been ignorant of them when they granted to this city the power to agree upon terms and regulations upon which the works should be built and operated, and it is incredible that they intended to except from this general grant the authority to agree upon the cardinal term which alone conditions the success of the entire undertaking. They made no such exception and that fact raises a conclusive presumption that they intended to make none, and it is not the province of the courts to do so. Madden v. Lancaster County, 12 C. C. A. 566, 572, 65 Fed. 188, 194; Wrightman v. Boone County, 31 C. C. A. 570, 572, 88 Fed. 435, 437; Union Central Life Ins. Co. v. Champlin, 54 C. C. A. 208, 210, 116 Fed. 858, 860. The conclusion is unavoidable that by its grant of power to agree upon the terms and regulations under which the waterworks should be constructed and operated the Legislature intended to grant, and it did grant to the city of Omaha, by apt words and in unmistakable terms, the power to make an unalterable contract regarding the water rates which the contractor might collect from private consumers for a reasonable term of years.

Did the city make such a contract? The stipulation concerning these rates is not embodied in the agreement for hydrant rentals which followed the ordinance of 1880. But the city required the contractor as a qualification to receive the contract, to accept the terms and conditions of the ordinance, and an accepted ordinance is a contract. The ordinance was an offer by the city of the terms and regulations under which it would enter into a contract for the construction and operation of the waterworks. The city prepared and passed the ordinance. All its terms and words were the language of the city. It was enacted under a statute which empowered the city to agree upon the water rates. It prescribed specific rates for the use of water by private consumers and provided that the water company should furnish water to them at such rates as should be agreed upon between the

water company and the consumers not exceeding those specified in the ordinance. The concession is readily made that the acceptance of this ordinance constituted a contract by the water company to furnish the water to private consumers at prices not exceeding those named in the ordinance. The contention is that it left the city free to reduce them. If so, the contract permitted the city to retain the power to withdraw from the water company all the substantial benefits of its undertaking, for a reduction of the rates to private consumers would diminish the most substantial part of its revenue and might ruin the company. It cannot be that either the city or Locke intended to make an agreement of this nature, for such a transaction would be contrary to the ordinary course of action of rational men under similar circumstances. The chief object of the city in the procurement of this contract was a supply of water. The great desideratum of the contractor was remunerative rates from private consumers. The presumption is that the contract secured both for both parties consented to it. Nor is it doubtful that this was its effect when its terms are fairly read. Concerning the meter rates which are the subject of this suit it stipulates:

"Rents for all purposes not herein named will be fixed by meter measurement as may be agreed upon between the consumer and water company not exceeding meter rates."

Here is a plain contract by the water company that it will agree with consumers upon rates not exceeding those specified in the ordinance, and as clear an agreement by the city that the water company and the consumers shall be free to agree upon any such rates which do not exceed those there named. The covenant of the city was that the water company should be free during the term of the agreement to contract with its consumers for any rate not exceeding those specified. Any reduction of those rates, any inhibition of agreements between the company and its consumers upon any rates not exceeding those there specified, necessarily deprives the company of that freedom to contract with its consumers and to collect from them which the city covenanted by this clause of the contract that it should enjoy. Any reduction of these rates necessarily impairs the obligation of this contract because it deprives the water company of the full benefit of the term of the contract which was most important and beneficial to it. The order of the water board which purported to reduce the rates was made pursuant to a law of the state and it was therefore violative of section 10, article 1, of the Constitution, and the bill states a good cause of action for an injunction to prevent its execution.

The suggestion of counsel for the city that the complainant has no right to this relief because there is a mortgage foreclosure sale in its chain of title has not been overlooked. It may be that this contention could have been maintained if the water rates under consideration in this case had been fixed by the charter of the mortgagor or by legislative grant to it upon the ground that provisions in such grants are not matters of contract, but of law, and hence do not pass to a mortgagee or to a purchaser at a foreclosure sale. Grand Rapids, etc., Ry. Co. v. Osborn, 193 U. S. 17, 24 Sup. Ct. 310, 48 L. Ed. 598; Union

Pac. R. Co. v. Mason City & Fort Dodge R. Co., 199 U. S. 160, 170, 26 Sup. Ct. 19, 50 L. Ed. 134; Hooker v. Burr, 194 U. S. 415, 24 Sup. Ct. 706, 48 L. Ed. 1046; People's Gas Light & Coke Co. v. Chicago, 194 U. S. 1, 16, 17, 24 Sup. Ct. 520, 48 L. Ed. 851. But the right to the rates which the mortgagor in this case held was a contract right vested in it, not by any charter or legislative grant, but by the agreement between the city and Locke and his assigns. The radical difference between charter rights and contract rights of this nature is marked in the opinion in the Detroit Case in 184 U. S., at pages 387–389, 22 Sup. Ct., at pages 417–419 (46 L. Ed. 592). The mortgage and the foreclosure sale under it in the case now under consideration by their terms include all the franchises, rights and property of the mortgagor. While the right of a corporation to exist may not be mortgaged or sold, all its contract rights with other corporations and with individuals may be, and this mortgage and the foreclosure sale under it passed the right of the mortgagor to maintain these water rates and to enforce its agreement with the city to the purchaser thereunder whence they have been conveyed to the complainant. Vicksburg v. Vicksburg Waterworks Co. (May 21, 1906) 26 Sup. Ct. 660, 50 L. Ed. 1102; Memphis, etc., R. Co. v. Commissioners, 112 U. S. 609, 5 Sup. Ct. 299, 28 L. Ed. 831; New Orleans, etc., R. Co. v. Delamore, 114 U. S. 501, 5 Sup. Ct. 1009, 29 L. Ed. 244; Julian v. Central Trust Co., 193 U. S. 93, 106, 24 Sup. Ct. 399, 48 L. Ed. 629.

The Legislature authorized the city to agree with the contractor upon water rates which he might collect of private consumers during the term of the contract. The city made this agreement with Locke. His rights have passed to the complainant. The order of the water board which attempts to reduce the agreed rates impairs the obligation of this contract. On this ground there is abundant equity in the bill, and it is unnecessary to consider or decide whether or not the bill also shows that the reduced rates are unreasonable or confiscatory.

The decree below is reversed and the case is remanded to the Circuit Court for further proceedings not inconsistent with the views expressed in this opinion.