Gusweiler,- J.
This cause is before the court upon an application of the plaintiff for a restraining order to enjoin the enforcement of Ordinance 253-1918 City of Cincinnati, by a challenge of the validity of said ordinance revising the fifty year franchise of The Cincinnati Street Railway Company. It is claimed that the City of *402 Cincinnati had no authority to pass such an ordinance and that in various respects said ordinance is invalid.
The question as to what might be a fair, reasonable rate of passenger car fare charge is not in issue. Our sole matter of concern involves the validity of the passage of Ordinance 253-1918 on August 23, 1918, as a compliance with the provisions of the Rogers law authorizing the fixing of rates of fare at the end of twenty years from the passage of the Act of April 22, 1896 (92 O. L., 277).
I.
As to the first question raised by the plaintiff we note that the Rogers law reads, as found in the Revised Statutes, Section 2505d:

“* * * the municipal corporation in which such street railroad is situated shall have the power at the end of twenty years from the passage of this act and every fifteen years thereafter, to fix the rates of fare, car license fees, percentage tax on gross earnings, transfers and all other terms and conditions on which said railroad is operated in said city.”

Plaintiff contends that the first twenty year period provided for in the Rogers law having expired on April 22, 1916, the passage of said ordinance on August 23, 1918, was too late for the City to exercise its power to revise such rates, etc., ‘‘at the end of twenty years from the passage of this aat.” This contention is based on the theory that ‘‘at the end of” means at the very moment of the expiration of that period. The defendants contend that the words ‘‘at the end of” as used in the Rogers law mean “withim a reasonable time after the expiration of” such time.
The evidence discloses that in 1913 the city council sought a valuation of the property of The Cincinnati Street Railway Company for the purpose of assisting in the revision; that in pursuance thereof, the Public Utilities Commission of Ohio handed down a tentative valuation; that on April 18, 1916, the city council passed a resolution finding that it was necessary that the terms and conditions of the grant be revised and changed and fixed April 22, 1916, as the date for commencing public *403 hearings thereon; that said hearings and proceedings were continued until the adoption of an ordinance of March 14, 1917, which was held invalid by the Supreme Court about March 5, 1918; that the city immediately resumed its proceedings and adopted the ordinance now in question, which was agreed to by the Street Railway Companies.
With the plaintiff we do not agree on this question. While the defendant’s theory is logical and reasonable, nevertheless we do not feel that the city is bound to act at all during the fifteen years; that it is not bound during said period at any particular moment to act, whether reasonably near the end of twenty years or not. We believe that the proper construction to be placed on this disputed language is such as would give the city the right to act at any time during the fifteen year period or at least within a reasonable time subsequent to the twenty year period, which we find was done in the case at bar. State ex rel Herman, v. The Oakwood Street Railway Company, 11 C.C.(N.S.), 263; affirmed, 81 O. S., 502; Davidson v. Mfg. Co., 99 Mich., 501; La Dow v. Bement & Son, 119 Mich., 685. However, after said decision and the exercise of such right, assuming that the Traction Company accepts the city’s change, then no further change can lawfully be made during the' remainder of the term of said fifteen years.
The Cincinnati Street Railway Company, having accepted the provisions of the original ordinance, effective beginning April 22, 1896, made in pursuance of said Rogers law, we must determine all the issues in this case based upon said ordinance and said Rogers law.
The Legislature of Ohio, in passing the Rogers law, considered fifty years as a reasonable period for the grant of the right to use the streets, etc., of a municipality, but when it came to the exercise of the power to regulate the rates of fare, etc., it realized that fifty years would be an unreasonable period to suspend such power of regulation, and therefore' divided said fifty year period into three periods, namely: First, the period of twenty years and the two periods of fifteen years each. Council had the delegated power of regulating such rates until such time as the city and the company agreed upon a rate mutually satis *404 factory. The acceptance of the fifty year franchise by the company resulted in the bargaining away by the City of Cincinnati of its power to regulate for the period of twenty years. At the end of such period the city was vested with two rights:
First. The delegated power to regulate which did not require the consent of the company. In fact, the rate continued to be established contrary to its wishes with the right of the company to file proceedings in court to collect said rate in accordance with the provisions of the Rogers law.
Second. The city could fix a rate satisfactory to the company, and the company accept the same, thereby constituting a contract and suspending the power of the municipality to regulate the rate during the period not exceeding fifteen years as provided by said Rogers law.
Our judgment is that at the expiration of the twenty year period, if the city and the company did not agree as to the rate fixed, said rate would be a regulatory rate and not a contract rate, and council having the power, could change said rate as often as public exigencies required. But as soon as a rate was fixed which was accepted by the company, a contract was thereby created, which can not be changed for the unexpired portion of said fifteen year period. That is, council and the company could agree at any time during said first fifteen year period, but could not exceed a period which would extend beyond the fifteen year period after the expiration of the twenty year period.
The power granted to the City of Cincinnati under the Rogers law to fix rates at the end of twenty years was continuing, we think, until an effectual ordinance was passed by council and accepted by the company resulting in a contract for the remainder of the fifteen year period. In re Railroad Commission Cases, 116 U. S., 307; Providence Bank v. Billing, 4 Peters, U. S., 514; Pond on Public Utilities, Section 499; Omaha Water Company v. Omaha, 147 Fed., 1; Freeport Water Co. v. Freeport City, 180 U. S., 587; Detroit v. Detroit St. Ry. Co., 184 U. S., 368; Home Telephone & Telegraph Co. v. City of Los Angeles, 155 Fed., 554. The last sentence of Section 2505d reads:
“Should the parties not agree as to whether said terms are equitable, the same may be submitted to adjudication of a court *405 of competent jurisdiction in a suit brought by the company to enjoin the municipal corporation from enforcing the terms so fixed.”
Our conclusion on this point is that the city had the power to enter into an agreement with the Street Railway Company for a period not exceeding the expiration of such fifteen year period. The effect of the acceptance of Ordinance 253-1918 'by the company was to suspend for the remainder of the fifteen year period the city’s power of regulating fares, etc.; but after the expiration of the first twenty year period, and before the making of such a contract, the city’s power of regulating fares, etc., was continuous and could not be exhausted either by lapse of time or by an ineffectual attempt to enter into a contract.
II.
Plaintiff’s second contention is that the provision in Section 2505d of said Rogers law to the effect that no increase of fare shall be allowed, applies during the entire fifty year period, while defendants contend that this restriction applies only to the twenty year period.
A careful reading of the Rogers law provisions can bring about no other conclusion than that plaintiff’s contention is not well taken.
The quotation of some of the language of the statute involving this point answers the question itself:
“* * * iTte municipal corporation in which such street railroad is situated ¿hall have the power at the end of twenty years from the passage of this ci>ct and every fifteen years thereafter to, fix such rates of fare, car license fees, percentage tax on gross earnings, transfers and all other terms and conditions on which said railroad is operated in said city.”
The only restrictions upon such right of revision at the end of such twenty year period, and subsequent fifteen year period are those set forth in the subsequent portion of said statute, to-wit:

“The terms there fixed shall be equitable according to the then cost of carrying passengers, etc.”

*406 There is no provision that after the expiration of such twenty year period no increase of fare or decrease of car license fees or percentage tax on gross earnings shall be allowed, as is provided with reference to the time the franchises of the constituent company are originally extended to fifty years. On the contrary, the express injunction is that the terms of such revision shall be equitable according to the then cost of carrying passengers. It follows, that this means that the fares originally charged may be either increased or reduced at the end of the twenty year period, if such increase or reduction “be equitable according to the then cost of carrying passengers.” The Rogers Law does provide relative to the initial agreement that during the first twenty years “that no increase of fares shall be allowed in any case, and that no decrease shall be allowed in any case of car license fee or percentage tax on gross earnings.” During the next two periods of fifteen years each, this limitation does not govern, but the municipality may fix the rates of fare, car license fees, percentage tax on gross earnings and all other terms and conditions upon which said railroad is operated in such city” * * # which terms there fixed shall be equitable according to the then cost of carrying passengers. ’ ’ The suggestion by plaintiff that it was the intention that the fares might be revised downward and not upward finds no support in the language of the statute or of the grant. "We fail to see by any show of reason that the restriction on the rates of fare provided in the Rogers Law for the first twenty years shall run for the full term of fifty years.
III.
Plaintiff’s third contention is that when the City on March 14, 1917, passed an ordinance attempting to revise the grant of August 13, 1896, which ordinance the Supreme Court decided as unconstitutional, that the City had exhaused its power to revise said ordinance during the present fifteen year period. Our conclusion on that point is as previously stated that .the power of the City of Cincinnati under the Rogers Law to fix rates, etc., at the end of twenty years was continuing until an effectual ordinance was passed by Council and accepted by the Company, resulting in a contract for the remainder of the fifteen year period.
*407 IV.
Plaintiff’s fourth contention is that the ordinance is defective in that it makes possible a reduction of the ear license fees, etc., which is prohibited in the initial twenty year period part of the Rogers Law. Our conclusion, of course, will be the same as recited in our foregoing opinion on the second objection made by the plaintiff.
V.
The plaintiff’s fifth contention is that the fares provided for in Ordinance No. 253-1918 are “uncertain” and “variable” and that the plan adopted in the ordinance of providing for service at cost is not a “fixing” of rates of fare. We are of the opinion that the authority granted in the Rogers Law, “to fix rates of fare etc.,” at the expiration of twenty years does not require the city to designate a definite amount, and council may provide a fixed rule by which rates based on service at cost shall be determined. Cricket et al v. State, 18 O. S., 9; Gest v. Construction Co., 224 Mo., 369; Regina v. Local Government Board, 87 Law Times Rep., N. S., 383; Flagg v. Columbia Co., 51 Ore., 172. The City having provided a definite rule by which the rates of fare, etc., are to be determined, the ordinance in law is not uncertain or variable. The power given by the ordinance to the Director of Street Railways is not an unlawful delegation of its power by Council. State, ex rel Campbell, v. The Cincinnati St. Ry. Co. et al, 97 O. S., 283. Fassy v. State ex rel, 95 O. S., 232; Alter v. Cincinnati, 56 O. S., 67; Akron v. Dobson, 81 O. S., 66; Tiedeman on Municipal Corporations, Section 113; Dillon on Municipal Corporations, Section 96. He is not authorized to fix fares and license fees. He is merely authorized to act in behalf of the City in approving certain expenditures. Council was authorized to impose upon him the ministerial duty of inspecting and approving or disapproving the street railway budget. He has no authority under the ordinance to approve expenditures except of the classes provided by the ordinance itself.
YI.
The plaintiff’s sixth contention is that the right of purchase at a certain amount reserved to the City in said ordinance, which item *408 is not contained in the original law, invalidated the present ordinance. The right of purchase reserved to the City not being binding on the City to purchase being a privilege merely which the City may or may not exercise, we fail to observe in what mannér the validity of the ordinance, can be brought into question.
VII.
The seventh contention is that said ordinance insofar as it postpones the payment of any obligation of the defendant companies to the said City, such as the deferring of the payment of the tax on gross earnings to the payment of other obligations of said companies, it is to that extent, the lending of the credit of the City to the said companies in violation of the Constitution of the State of Ohio. The ordinance provides that a sufficient sum is to be produced by the fares charged so that the City shall in any event get the specified sum of money. The Supreme Court held in 97 O. S., 83, that the City’s Rapid Transit property earnings and income were pledged as security for the securities of the Traction Company, which in effect amounted to the lending of the City’s credit to this extent which the Constitution prohibits. But the ease at bar presents no such case at all similar. There is no property belonging to the City being pledged or used to involve the City’s credit in any manner whatsoever. We fail to find any responsibility on the part of the City for any obligations incurred by the companies or any evidence tending to indicate a lending of credit in any manner by the City. We disagree with the plaintiff on this contention.
VIII.
Plaintiff’s eighth contention is that The Cincinnati & Hamilton Traction Company was not included within the provision of the Rogers grant, but is included in the ordinance in question, and therefore the ordinance is invalid.
Since the making of the Rogers grant, The Cincinnati Street Railway Company and The Cincinnati Traction Company have made numerous line extensions, and these extensions are all covered by the ordinance under consideration. We are of the opinion that the authority of the City in revising the Rogers grant is *409 broad enough to include the power to contract with The Cincinnati Traction Company and The Cincinnati Street Railway Company for what is in effect another extension. The evidence discloses that The Cincinnati & Hamilton Traction Company (the Millcreek Valley line) is under lease to The Ohio Traction Company, the owner of the entire capital stock "of The Cincinnati Traction Company; that it extends for a distance of perhaps five miles through a populous portion of the City of Cincinnati and is an essential part of the City’s street railway lines; that the Cincinnati & Hamilton Traction Company claims the right to charge fares of 10 cents or 8 1-3 cents by the sale of tickets; that the city,' for the purpose of making the fares of that road uniform with other street railway routes and for the porpose of giving the City of Cincinnati the benefit of The Cincinnati & Hamilton Traction Company’s service for the purpose of Braking all of that road a virtual extension of the Cincinnati system, required The Cincinnati Traction Company and The Cincinnati Street Railway Company as a condition to a revision, to agree to incorporate The- Cincinnati & Hamilton Traction Company road within the purpose of the present ordinance. It appears from the evidence that approximately 85% of the receipts and expenditures of the Millcreek Valley line arises from business within the City of Cincinnati, and that of the remainder, at least one-half arises from travel to and within the villages of Lockland, Wyoming and Glendale, which are suburbs of Cincinnati, so that the City is not prejudiced in any way by this part of the ordinance. On the contrary, it is admittedly benefited thereby.
The question as to whether or not the street car fares charged under this last ordinance revision are fair, just and reasonable is not raised by the issues in this case, and is. not before us for consideration. Our entire concern in the case at bar is the City’s power to pass such an ordinance and whether said ordinance is valid.
Our finding is that the City of Cincinnati had the power and authority to pass said ordinance and that the terms thereof are valid in every particular. It follows that the injunctive relief prayed for herein will be denied and the petition will be dismissed at plaintiff’s costs.