# CLEVELAND *v.* CLEVELAND ELECTRIC RAILWAY COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 183.   Argued Febuary 27, 28, 1906.—Decided April 9, 1906.

In construing municipal ordinances dealing with important matters such as extensions of street railway franchises it may reasonably be presumed that no provision escaped attention or was misunderstood; and, while a mistake might occur in one ordinance, it will not be supposed that the mistake occurred in four ordinances dealing with the same subject.

Ordinances granting an extension to a consolidated street railway corporation, possessing franchises expiring at different times, on conditions involving great expense to the corporation and resulting in substantial benefits to the public as to transfers for single fares and relating to the entire system as well as the extensions granted, and providing that the right granted terminate with the then existing grants of the main line at a specified date later than that of termination of some of the franchises, amount, on the acceptance by the company and compliance with the conditions, to a contract within the protection of the impairment clause of the Constitution extending the various franchises to that date; the period, in this case of four years, not being an unreasonable one in view of the substantial benefits accruing to the public.

*Cleveland* v. *Cleveland City Railway Co.,* 194 U. S. 517, followed as to the power of the city council of Cleveland to pass ordinances diminishing the rate of fare on street railways in view of the contracts contained in ordinances heretofore passed in regard to street railways.

BILL in equity to enjoin the enforcement of an ordinance of the city of Cleveland, passed January 11, 1904, purporting to grant to the Forest City Railway Company the right to maintain and operate a street railroad upon streets alleged to be covered by grants to the appellee not yet expired and which, it is contended, constitute contracts, the obligation of which is impaired by the ordinance of January 11, 1904, in violation of the contract clause of the Constitution of the United States.

A preliminary injunction was granted, which, upon final hearing, was made perpetual. 135 Fed. Rep. 368. And this appeal was taken. The case was heard upon bill and answer, and an outline of the facts is as follows:

The Cleveland Electric Railway Company is a consolidated company, organized under the laws of Ohio in 1893. None of its constituent companies had at that time any rights in the streets in controversy. In 1903 the company acquired by purchase the lines of railway and the rights, privileges and franchises of the Cleveland City Railway Company. The latter company was constituted of the Woodland Avenue and West Side Street Railway Company and the Cleveland City Cable Railway Company, each of these companies being itself a consolidated company.

The Woodland Avenue Railway Company, before its consolidation with the West Side Street Railroad Company, was the successor by purchase in 1885 of the Kinsman Street Railroad Company, its rights, property and franchises, which, by the terms of the consolidation of the Woodland Avenue and West Side Companies in 1886, vested in the Woodland Avenue and West Side Railroad Company.

The rights, privileges and franchises of the Kinsman Street Railroad were derived from the city by an ordinance dated August 25, 1879, which granted to the company and to its successors and assigns the right to maintain and operate a double track street railroad in the city of Cleveland, "commencing on Superior street at the intersection of Water street, thence through Superior street and around the 'southwest corner of

Monumental square to Ontario street; thence through Ontario street to and through a portion of Broadway and Woodland avenue (formerly Kinsman street); thence through said Wood- land avenue to Madison avenue."

It was provided that "the authority, privileges and franchises . . . granted and renewed to said company, its successors and assigns," should continue for a period of twenty-five years from the twentieth day of September, 1879. The expiration of the grant was, therefore, fixed at September 20, 1904. The ordinance was accepted by the Kinsman Company.

On May 14, 1883, the city passed an ordinance entitled "An ordinance to permit the Woodland Avenue Railway Company to extend its lines of railway on Woodland avenue from the Cleveland and Pittsburgh Crossing to Corwin street." The ordinance was accepted and the line built as an extension of the tracks built by the Kinsman Company.

Prior to the year 1885 the two companies which formed the Woodland avenue and West Side Street Railroad Company were independent lines, with independent franchises from the city, one operating on the west side of Cuyahoga river, the other upon the east side and running to the southeasterly portion of the city. There was no interchange of traffic between them, and, at the time of the consolidation, the West Side Company had the right by ordinance from the city to operate its road for twenty-five years from February, 1883, namely, to February, 1908.

Under the laws of Ohio the city council had the power to fix the terms and conditions upon which railways might be consolidated, and in pursuance of the statute the companies notified the council of their proposed consolidation, and thereupon the council passed an ordinance February 1, 1885, giving the consent of the city to the consolidation upon the following conditions:

"The said consolidated company is to carry passengers through, without change of cars, by running of the cars through from the workhouse on the line of the Woodland Avenue Rail-

way Company to the point on the West Side Railroad where Gordon avenue crosses Lorain street; and, when practicable in the judgment of the council, to do likewise on the branches of the consolidated lines; and that for a single fare from any point to any point on the lines and branches of the consolidated road no greater charge than five cents shall be collected; and that tickets at the rate of eleven for fifty cents or twenty-two for one dollar shall at all times be kept for sale on cars by conductors."

It was provided that the ordinance should take effect after its legal publication and the filing of the written acceptance by the companies of the terms thereof. The written acceptance was filed and the terms of the ordinance complied with.

The line fixed in the ordinance covers the lines of the Kinsman Street Railroad Company and the lines referred to in the ordinance of January 11, 1904, sought to be enjoined.

No date for the expiration of the grant was fixed, but it was provided that the consolidated company should be liable to all the liabilities, conditions and penalties to which the several companies were liable.

On April 8, 1887, an ordinance was passed authorizing the consolidated company to lay an additional track on Franklin avenue between Pearl street and the westerly line of Franklin circle, and to occupy and operate said extension as therein provided, but on the express condition that no increase of fare should be charged by said railroad company or any part *of its main line* or *said extension*, and so that but one fare, not to exceed five cents, should be charged between any points on *said company's main line or extensions*. The ordinance contained the following provision: "and the grant here granted shall terminate with the *present grant of the main line*, to wit, tenth day of February, 1908." And it is alleged that the "main line" referred to includes the line operated on Woodland avenue (formerly Kinsman street) and originally granted to the Kinsman Street Railroad Company by the ordinance of August, 1879.

On August 12, 1887, an ordinance was passed authorizing the consolidated company to lay and extend a track in Franklin avenue, from Kentucky street to Waverly avenue. In this ordinance there was a prohibition of increase of fare "between any points on said company's *main line or extension*," and that the right granted should "terminate with the present grant of the *main line*, to wit, on the tenth day of February, 1908."

Prior to March, 1889, the lines of the railway of the Woodland Avenue and West Side Street Railway Company were operated by horse power, and there came a demand for more rapid means of transit afforded by electrical equipment, and on March 22, 1889, and, it is alleged, to secure such means of transit, the city granted to the consolidated company the right to use electricity in operating its entire line of street railroad, as the same then existed, with any and all extensions that might thereafter be made thereto. It was provided that the grant should be in force from the time of its legal publication and written acceptance by the company. The ordinance recited that "said company shall have the right to maintain and operate its present line and any and all extensions until the expiration of the present grant of said company, to wit, the tenth of February, 1908." The written acceptance was filed, and, it is alleged, through and by compliance with its terms the consolidated company, and the Cleveland Electric Railway Company, as its successor, acquired the absolute right by contract to continue to maintain and operate its line of road as it then existed and all extensions thereof up to the tenth day of February, 1908. This is denied. It is alleged that the appellee expended not less than the sum of $700,000 in equipping its road with electricity as a motive power.

On June 20, 1892, the city passed an ordinance authorizing the consolidated company to lay an additional track on Kinsman street, thereby making its line on said street a double-track railway. The point of beginning was designated to be "at the intersection of its *main tracks*." There was a provision for termination on the tenth of February, 1908, as in the

other ordinances. And there was the same provision in an ordinance passed August 1, 1892, authorizing an extension of tracks on Lorain street. Again, in an ordinance of the twenty-second of August, authorizing the construction and mainte-nance of a suitable and necessary line of feed wires upon cer-tain streets. An ordinance of October 17, 1892, empowering the company to lay an additional track on Woodland avenue between certain streets, contained the same provision. On July 17, 1893, an ordinance was passed authorizing the Cleve-land City Railway Company, which had become the owner of the rights of the Woodland Avenue and West Side Street Rail-road Company, to lay an additional track upon South Wood-land avenue. This ordinance contained a provision as to the operation of the tracks in connection with the other lines, the kind and number of cars to be used and the manner of running and intervals of time to be run, and the sprinkling of tracks. The grant was to remain in force until the twenty-sixth of Jan-uary, 1910. February 19, 1894, an ordinance was passed granting permission to the Cleveland Electric Railway and the Cleveland City Railway Company to build a cross-town road on Willson avenue. It was provided that the grant was to continue in force until the first day of July, 1914.

Of this ordinance the bill alleges:

"This grant shall be in force until the first day of July, 1914.

"Your orator shows that the grant under which the Cleve-land Electric Railway Company was, at the time of the passage of the last-mentioned ordinance, operating, as to several of its lines, expires on the first of July, 1914, and that the obligations imposed upon the Cleveland City Railway Company by virtue of said ordinance, in this paragraph set forth, are continuing obligations, requiring of your orator the performance of all and singular the conditions of said ordinance, including the issuing of transfers from its other lines and accepting transfers from its said Willson avenue line, up to the first day of July, 1914, whereby your orator submits that the council thereby not only granted but required of said the Cleveland City Railway Com-

pany the operation of its entire system of railway up to the first day of July, 1914.

"Your orator further shows that Willson avenue and the lines of road therein constructed are intersected by both Kinsman street and Woodland avenue (formerly Kinsman street)."

*Mr. Newton D. Baker* and *Mr. D. C. Westenhaver* for appellants:

A course of procedure imposed by statute for the exercise of powers conferred by the State is of the substance of the powers themselves when those powers relate to the transactions of a municipal corporation in its public, as distinguished from its private or proprietary character. 1 Dillon Mun. Corp. § 307.

A municipal corporation possesses and can exercise the following powers and no others. First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation not simply convenient but indispensable. 1 Dillon Mun. Corp. § 89.

Its powers are strictly limited. *Bloom v. Xenia*, 32 Ohio St. 461, 465; *Ravenna v. Penn. Co.*, 45 Ohio St. 118.

The contract right claimed by the plaintiff is a franchise. Franchises are special privileges conferred by the government on individuals but which do not belong to the citizens of a country generally of common right. *Peoples' Railroad v. Memphis R. R.*, 10 Wall. 308; *Bank of Augusta v. Earle*, 13 Peters, 519; *State ex rel. v. The Cincinnati Gas Co.*, 18 Ohio St. 262; *Railway v. Railway*, 30 Ohio St. 604.

The continued existence of a government would be of no great value if by implications and presumptions it was disarmed of the powers necessary to accomplish the ends of its creation, and the functions it was designed to perform transferred to the hands of privileged corporations. *Charles River Bridge v. Warren Bridge*, 11 Peters, 420; *Detroit v. Detroit City Railway*, 60

Fed. Rep. 161; *Citizens' Railway* v. *Detroit*, 171 U. S. 48; *Water Co.* v. *Freeport*, 180 U. S. 598.

The appellee took only what was within the powers of the municipal corporation to grant and what it has not granted in terms express and free from doubt, the complainant cannot claim. *Cleveland* v. *State Bank of Ohio*, 16 Ohio St. 236, 269; *McCloud* v. *Columbus*, 54 Ohio St. 493; *Thomas* v. *City of Richmond*, 12 Wall. 356; *Stone* v. *Bank of Commerce*, 174 U. S. 424; Booth on Street Railways, §§ 33, 43; *N. O. & Carrolton R. R. Co.* v. *New Orleans*, 34 La. Ann. 429.

It is manifest that if the correct date of the termination of the grant to which the extension was made was not the tenth day of February, 1908, but was the twentieth day of September, 1904, the misrecital of the true date after a *videlicet* would not control the interpretation, but the true date would prevail. The misrecital of the date in these ordinances cannot control the fact which is made the primary test of the date of expiration. That this is the uniform construction of instruments in which there is a conflict between the precedent matter and that which follows a *videlicet*, is well known. *Sullivan* v. *State*, 67 Mississippi, 346; *Gleason* v. *McVickar*, 7 Cowan (N. Y.), 42, 43; *Commonwealth* v. *Quinlan*, 153 Massachusetts, 483, 484; *Buck* v. *Lewis*, 9 Minnesota, 314; *Stukely* v. *Butler*, Hobb, 175; *Cotton* v. *Ward*, 19 Kentucky (3 Monroe), 310.

*Mr. Andrew Squire* and *Mr. John W. Warrington*, with whom *Mr. William B. Sanders* was on the brief, for appellee:

The bill presents a case which was clearly within the jurisdiction of the Circuit Court. *City Railway Co.* v. *Citizens' Railway Co.*, 166 U. S. 357; *Cleveland* v. *Cleveland City Railway Co.*, 194 U. S. 517, and shows a state of facts entitling appellee to relief in equity. *Iron Mountain R. R. Co.* v. *Memphis*, 96 Fed. Rep. 131; *Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 12; *Cleveland* v. *Cleveland City Railway Co.*, *supra*.

The city having, by the ordinance of March 22, 1889, provided that the company might equip its road with electricity

and operate its entire system therewith until February, 1908, is estopped from alleging that the right to the operation of any portion of said system expires before such date.    *City Railway* v. *Citizens' Railroad Co.*, 166 U. S. 557.

The legal effect of the ordinance providing for the establishment of a cross-town line upon Willson avenue, to be operated in connection with the other systems of railway then in operation, was to make a uniform date for the expiration of the franchise grants of the two companies which jointly built the Willson avenue line as an extension to their existing lines, and were to operate it in accordance with the provisions of the ordinance; and this uniform date was the first day of July, 1914.    *Cleveland* v. *Railway Co.*, 194 U. S. 517.

The ordinance of January 11, 1904, which is attacked in the bill, is a law of the State authorizing the taking of the property of the railway company without due process of law, and void as in contravention of the Constitution of the United States.

The tracks, poles, wires and appliances in use by the complainant company in the operation of its railroad in Woodland avenue constitute its private property, and such private property of the complainant is protected by the same guaranties of the Constitution against taking without due process of law as is the property of an individual.    *C., B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226; *Davidson* v. *New Orleans,* 96 U. S. 97; *Missouri Pacific Ry. Co.* v. *Nebraska,* 164 U. S. 403; Cooley's Constitutional Limitations, 694; *Turnpike Co.* v. *Parks et al.,* 50 Ohio St. 598; *Richer* v. *Hoyt,* 53 Michigan, 185.

MR. JUSTICE MCKENNA, after making the foregoing statement, delivered the opinion of the court.

The system of railways operated by the appellee comprises about two hundred and thirty-six miles of track.    The lines in controversy are but seven miles of this aggregate, and rest for their initial grant on the ordinance of the twenty-fifth of August, 1879, to the Kinsman Street Railroad Company.    This

grant expired on the twentieth of September, 1904, unless extended by subsequent ordinances. That it was so extended is the contention of the appellee, and that it has the right to operate its railways on the streets in controversy until February, 1908, under the contracts constituted by those ordinances and their acceptance. A special reliance is based on the ordinance authorizing a change to electricity as a motive power in compliance with which, it is alleged, that the appellee expended a sum not less than $700,000. The city takes issue with these contentions. It asserts that the original grant to the Kinsman Company was not extended as a matter of fact and could not be extended as a matter of law, the city not having the power to prolong the life of the original grant. The argument advanced is somewhat roundabout. Its ultimate reliance is upon certain sections of the Revised Statutes of Ohio, from which it is deduced that it was incompetent for the council to authorize an extension to expire at a different time from the main grant. To hold otherwise, it is said, would be to hold that the council would have power to grant extensions in perpetuity, while by section 2502 of the Revised Statutes of Ohio there can be no grant or a renewal of a grant for a greater period than twenty-five years.          •

Ordinarily it would be more orderly to consider the power of the city before considering its exercise or the intention to exercise it. For our purposes, however, it becomes convenient to consider first the intention of the city by the ordinances in question.

The purpose of the ordinances, we think, presents no insolvable doubts. Indeed we think it is clear that the city intended to secure, and did secure for its citizens, valuable transportation facilities and intended to extend that part of the system of railways consisting of the Kinsman street line and its extension until February, 1908. There can be no other reasonable meaning of what the city did or of the language it used. It recognized a main line not in one ordinance but many ordinances, and the purpose was to join the initial grant and its -

extensions together, and continue it, and those combined, until 1908. There could have been no mistake in the language used or misunderstanding of it. We might suppose a mistake in one ordinance but we cannot suppose a mistake in four ordinances. The matters dealt with were important, and it is a reasonable presumption that no provision concerning them escaped attention or was misunderstood. The situation must be kept in mind. The Woodland Avenue Railway Company (successor to the right of the Kinsman Street Company) operated a road on the west side of the Cuyahoga river; the West Side Street Railroad Company operated on the east side. They were independent companies, and the interchange of traffic between them was obviously a public advantage. This was accomplished by the consolidation of the companies and the ordinance fixing the terms and conditions of the consolidation. By that ordinance through cars were provided for and a single fare was established "from any point to any point on the lines and branches of the consolidated road." This imposed duties on the companies and it also secured to them rights. The grants of the constituent companies expired at different times, respectively 1904 and 1908, and it is contended that by the mere union of the lines the duties and rights of the companies continued for the longer term. This, however, we are not required to determine.

In April, 1887, an ordinance was passed to authorize the consolidated company to lay a double track in Franklin avenue. In this ordinance the words upon which the controversy turns as to the extension of the grant to 1908 occur for the first time. The grant was on the express condition that no increase of fare should be charged by the company "on any part of its *main line* or said extension, so that but one fare, not to exceed five cents, shall be charged between points on said company's *main line* or extension . . . and the right herein shall terminate with the present grant of the *main line*, to wit, on the tenth day of February, 1908." This language is substantially repeated in the three other ordinances. We think there can be

no doubt of its purpose, and if it were any part of our function to pass upon the wisdom of actions we might say it was a wise purpose, certainly had much reason to commend it. Why break up, or risk the breaking up, of a union of lines and the interchange of their traffic in a continuous carriage of passengers at one rate of fare? The extension was not for an unreasonable time. One of the grants did not expire until 1908, and it was reasonable to continue the other till that time. What policy or purpose could be urged against it? The suggestion of counsel for appellants does not commend itself. The suggestion is that possibly it was the purpose of the city to preserve different dates for the expiration of the grants, so that, the company coming to the city with its line in fragments, the city could consider whether concessions in the public interest might not be required as a condition of the renewal of rights. To adopt the suggestion we must suppose a situation more difficult than that presented. Forethought of the public interests must be attributed to the city council when it passed the consolidation and other ordinances. There was an immediate public benefit to be considered, and the time of extension was not so long as to cause a dread of unforeseen conditions or to make necessary a provision for them. Besides, inducement to the company had to be offered and secured. However, a discussion of policies is unnecessary. We find the ordinances plainly written, and we turn to the construction of the power of the city to grant the extension.

The question of the intention of the ordinances being settled, the question of the power of the city council is settled, in so far as this case can be distinguished from *Cleveland* v. *Cleveland City Railway Company*, 194 U. S. 517. In the latter case we had occasion to consider the power of the city to pass the ordinances relied on by the appellee in the case at bar, and their effect as contracts between the city and the companies. The suit was brought to enjoin the enforcement of an ordinance passed October 17, 1898, reducing the fare on the Kinsman Street Railroad to four cents, under a right reserved to "in-

crease or diminish the rate of fare" on said road as the city might "deem justifiable and expedient." The Cleveland City Railway Company, successor of the Kinsman Street Company, contended that the power had been given up in subsequent ordinances, and the decision sustained the contention. The sections of the Revised Statutes of Ohio were quoted and by them it was said "there was lodged by the legislature of Ohio in the municipal council of Cleveland comprehensive power to contract with street railway companies in respect to the terms and conditions upon which such roads might be constructed, operated, extended and consolidated, the only limitation upon the power being that in case of an extension no increase in rate of fare should be allowed." This extract leaves nothing to be said as to the power of the city and the rest of the opinion leaves little to be said as to the question of the ordinances constituting contracts with the company. All the considerations which could be urged against them as such were discussed and passed on, and the ordinances involved were those relied on by the appellee in the present case, to wit, the ordinance making the grant to the Kinsman Street Company of August, 1879, the ordinance consolidating the West Side Railroad Company and the Woodland Avenue Railroad Company, and the ordinance of April 8, 1887, and August 12, 1887. There was a reference to the provision of the ordinance of April 8, and its repetition in the ordinance of August 12, making the time of the termination of the grants that "of the *main line,* to wit, on the tenth day of February, 1908." The reference was not casual. The provision was regarded as an element in the purpose of the extension of the roads and as a means of securing the public advantages of the union of the lines and one rate of fare over all of them.

Another contention was noticed which was pressed there and it is again pressed here, based on section 2502 of the Revised Statutes of Ohio, that a municipal corporation could not, during the term of the grant or the renewal thereof, release the grantee from any obligation or liability imposed by the grant.

This provision was urged as preventing a surrender by the city of the power reserved in the grant to the Kinsman Street Railway Company, because the reservation was an obligation and liability imposed upon the railroad corporation. Section 2501 was urged as precluding any attempt to treat the consent of the city to extensions, consolidations, or change of motive power as of renewals of the rights renewed by the ordinance of 1879, because it was contended that the positive provisions of that section permitted such renewals only at the expiration of original grants. Both contentions were rejected. Of section 2502 it was said that the laws of Ohio permitted a modification of a contract between a municipality and the owner of a street railroad, and section 2501 had been held to authorize renewals to be made before the expiration of the original grant. To support the latter conclusion we cited *State* v. *East Cleveland Railroad Co.*, 6 Ohio Circuit Court Rep. 318, affirmed by the Supreme Court of Ohio. Appellants concede the authority of that case, but say the ordinance it passed upon left no doubt of the intention of the city, whereas in the case at bar, considering the provisions of the statutes and the ordinances, all intendments must be held to be against an intention to renew the original grant. In other words, the contention is that while "no set form of words is necessary," it is yet urged that "such result can only be effected by apt words evincing a plain and unmistakable purpose to make a renewal." It is not a question of power, therefore, to pass the ordinances, but of the intention of the city in passing them, and the latter we have sufficiently considered. It is only necessary to add that we do not find uncertainty in them and cannot, therefore, yield to the conclusion deduced from its supposed existence. The situation was plain and the city council met it with a definite and reasonable plan. It must not be overlooked that if the city gave rights it secured benefits and that the rights could not be exercised without large expenditures of money or be of any value unless assured of stability. Seven hundred thousand dollars, the appellee urges, it expended on the change to elec-

trical power, and the allegation is hardly made doubtful by the answer. We cannot believe that the expenditure of that sum was unworthy of consideration by the city, or that the city intended to exact it as an obligation that could be imposed on the company, or regarded it as anything but a benefit to the city, to be recompensed and secured by the ordinance which was passed.

It is urged by the appellee that the roads operated by it constituted a unified system, and by virtue of the ordinance of July 17, 1893, fixing the time of the expiration of the grant thereby made the twenty-sixth of January, 1910, and the ordinance of February, 1894, in which the date of the expiration of the grant there provided for was the first day of July, 1914, extended the time of all the grants composing the system until 1914. We do not think this question properly arises on the record, and we, therefore, do not pass upon it.

*Decree affirmed.*